Bill SANSON and Vick BROWN *v.*
Kenneth PULLUM and Patricia PULLUM

81-77                                    619 S.W. 2d 641

Supreme Court of Arkansas
Opinion delivered July 13, 1981
[Rehearing denied September 14, 1981.]

*Guy H. Jones, Phil Stratton, Guy Jones, Jr.* and *Casey*

*Jones*, by: *Guy H. Jones*, for appellants.

*Matthews & Sanders*, by: *Roy Gene Sanders*, and *Alex Street*, for appellee.

GEORGE ROSE SMITH, Justice. This action for personal injuries and property damages comes to this court under Rule 29 (1) (o). On September 30, 1975, the plaintiff Patricia Pullum was driving her husband's car on a highway in Faulkner county. The defendant Vick Brown, driving a farm tractor owned by his alleged employer, the defendant Bill Sanson, entered the highway from Mrs. Pullum's left and crossed her path, pulling a load of silage behind the tractor. Mrs. Pullum testified that she did not have time to stop and struck the tractor just before it completed its crossing, with the farm trailer still blocking the highway. This appeal is from a verdict and judgment awarding Mrs. Pullum $29,000 for her injuries and her husband $2,000 for the damage to the car. Four points for reversal are argued.

First, at the close of the plantiffs' proof Sanson moved for a directed verdict on the ground that the proof did not show Brown to have been acting as Sanson's employee on the day of the accident. The motion was overruled. Sanson then introduced testimony and did not renew his motion at the end of the trial. Any error was therefore waived. *Granite Mountain Rest Home* v. *Schwartz*, 236 Ark. 46, 364 S.W. 2d 306 (1963).

Sanson is mistaken in arguing that our settled rule on this point was changed by ARCP, Rule 50 (a). That Rule states that a party may move for a directed verdict at the close of his opponent's evidence without reserving the right to offer evidence if the motion is not granted. It also states that a party may move for a directed verdict at the close of all the evidence. Neither statement changes pre-existing Arkansas practice. The reason underlying the *Granite Mountain* decision exists without regard to the new Rule. If a defendant could introduce evidence without waiving his first motion for a directed verdict, he could supply the very defect complained of and still obtain a new trial after having speculated upon the possibility of a favorable verdict upon

all the proof. In fact, that is what would happen here, for Sanson later testified that he had given Brown a check for wages on the very day of the accident. If counsel thought there was still no proof of Brown's status as an employee when the accident occurred, the motion for a directed verdict could easily have been renewed. That was not done; so the point was waived.

Second, it is argued that the plaintiffs should not have been permitted to introduce medical bills and records "in a bundle" without having laid a proper foundation. Two instances are mentioned. Mrs. Pullum first identified a package containing her medical bills, copies of which defense counsel had had ever since her discovery deposition was taken. Counsel's objection, that she should first be required to show that all the bills after 1976 were for treatment attributable to the 1975 accident, was properly overruled. Mrs. Pullum had already described her injuries, had said that she had back pain and a fracture in her neck, and had explained that she had had to return to the hospital in 1978 and again in 1979. If defense counsel wanted to further develop the connection between the accident and the medical bills, that was a proper matter for cross examination. In the second instance complained of, medical and hospital records were apparently introduced as exhibits to Dr. Banister's deposition. There was only a general objection, and inasmuch as the exhibits have not been abstracted we cannot say that anything in them was either inadmissible or prejudicial. Counsel rely on *Henry* v. *Landreth*, 254 Ark. 483, 494 S.W. 2d 114 (1973), but the court's statement that the plaintiff had the burden of showing that each medical bill was related to the accident does not demonstrate any error on the part of the trial court in the case at bar.

Third, Jerry Gross, the state trooper who investigated the accident, testified on cross examination that he had been told in his training that the reaction time between a driver's seeing danger and hitting the brakes was four and a half seconds. The blunder was so obvious that counsel argued with the witness at length, insisting that the time was about a second. The witness, however, clung to his position. After the trial the defendants filed a motion for a new trial on the

ground of newly discovered evidence, attaching the trooper's affidavit that he should have stated the reaction time as three fourths of a second and also attaching two jurors' identical affidavits saying they had based their finding that Mrs. Pullum was not negligent upon the trooper's statement about the reaction time.

The trial judge properly overruled the motion for a new trial. No diligence on the part of counsel was shown, since he had interviewed the officer only briefly before the trial and evidently had not discussed reaction time with him. Moreover, even an admission of perjury does not necessarily call for a new trial when there is other evidence to support the verdict. *Little* v. *State*, 161 Ark. 245, 255 S.W. 892 (1923). Here Mrs. Pullum testified she was driving at about 40 miles an hour when she was 400 feet from the point of the accident. When she saw the tractor coming toward the highway she touched her brakes, but the tractor driver slowed down and came to a complete stop. "I proceeded ahead. Uh, when I was so close to him that I couldn't avoid hitting him, he pulled across the road in front of me." Brown testified that he never saw the car before the impact. Thus the jury did not have to rely upon the trooper's testimony to find that Brown's negligence cause the accident.

The jurors' affidavits were clearly inadmissible. Uniform Evidence Rule 606 (b) states plainly that a juror may not testify as to the effect of anything upon his mind as influencing him to assent to the verdict, nor may his affidavit be received concerning a matter about which he is precluded from testifying. We take this opportunity to state unequivocally, for the guidance of the bar, that in our opinion it is improper for a lawyer to interview jurors after a trial in an effort to obtain such inadmissible affidavits to impeach their own verdict.

Fourth, it is argued that the court unduly limited counsel's cross examination of Mrs. Pullum about her medical treatment. The argument is fundamentally defective in that we are never told in the brief just what admissible testimony counsel might have brought out on cross examination. Moreover, the argument is based upon an extended

in-chambers colloquy that is not abstracted. We are not in a position to say that the right of cross examination was unduly restricted.

Affirmed.

PURTLE, J., not participating.