Ernest L. WALKER *v.* STATE of Arkansas

CR 81-73                              639 S.W.2d 742

Supreme Court of Arkansas
Opinion delivered October 11, 1982

*Anthony W. Bartels,* for appellant.

*Steve Clark,* Atty. Gen., by: *Arnold M. Jochums,* Asst. Atty. Gen., for appellee.

RICHARD B. ADKISSON, Chief Justice. On March 27, 1980, Carolyn Winston, a resident of Joiner, Arkansas, was found dead in her car with lacerations on her face and a bullet hole in her chest. Appellant, Ernest L. Walker, was subsequently charged with capital murder. After a trial by jury, appellant was convicted as charged and sentenced to life imprisonment without parole. On appeal appellant questions the sufficiency of the evidence to corroborate the testimony of the accomplice, Otis Hendrix. We affirm.

The events occurring before the murder are undisputed. Appellant, who lived in Chicago, decided to visit some of his Arkansas relatives, including the Selvy family who lived near Joiner. Hendrix, a Chicago relative, accompanied him to Arkansas. They left Chicago on March 21, 1980, in appellant's red and white 1977 Oldsmobile. They spent several days visiting appellant's mother in Parkin, Arkansas, and arrived in Joiner on Tuesday afternoon, March 25.

Once in Joiner, they went to the Selvy house which was located on the Bowden plantation. The victim lived in the Bowden residence, which was situated north of the Selvy house. Barbara Williams lived in another Bowden plantation house which was located between the Selvy and Bowden houses.

Appellant and Hendrix spent Wednesday visiting relatives and driving around Joiner. They also went to the First National Bank in Joiner so appellant could get a hundred dollar bill changed. On Thursday they drank beer, watched television, and did more visiting.

Hendrix, an undisputed accomplice to the murder, testified as to the events which transpired Thursday night: He and appellant were at Thomas Selvy's house. About 9:00 p.m. appellant told him to "come on" and they left the Selvy house, walking in the direction of the Bowden residence. On the way, appellant gave Hendrix a pair of white rubber gloves and kept a green pair for himself. Upon arriving at the Bowden residence, appellant knocked on the door which was answered by the victim. He told her they were having car

trouble and she allowed appellant and Hendrix to come inside to use the phone. When appellant told her no one answered the number he had called, she offered to drive them to their car. After they had ridden several miles appellant asked her to pull over. She refused and at that time appellant pulled out a .38 caliber pistol and announced that this was a "stick up." She stopped the car; a scuffle ensued; appellant pulled her out of the car and beat her repeatedly with a .38 caliber pistol. In the course of the beating the handle of the pistol broke. Appellant then shot her one time and, with the help of Hendrix, put her in the back seat of the car on the floor. Appellant turned the car around at a nearby railroad track, drove past the Bowden house, and parked beside some tractors. During this time, Hendrix discovered the victim had a handgun in her pocket which he gave to appellant. Appellant and Hendrix then walked back to appellant's car, which had been parked at Barbara Williams's house. When they started it up they realized it was stuck in the mud, so appellant walked up to the Williams house and spoke for a minute with Mrs. Williams. Before she could help, members of the Selvy family came over and got the car out of the mud. On the way back to Chicago appellant told Hendrix that he should "say nothing" and get rid of his clothes.

Hendrix testified that while at his girlfriend's house in Chicago and while enroute to Arkansas, he and appellant had discussed "doing a robbery." Once in Joiner, Hendrix heard appellant ask several cousins if they knew of any "rich folks." Hendrix stated that he and appellant discussed robbing the people who lived in the Bowden residence. Hendrix also stated that appellant had a .25 caliber pistol in addition to the .38.

Ark. Stat. Ann. § 43-2116 (Repl. 1977) requires that Hendrix's testimony be corroborated since it is undisputed that he was an accomplice to the murder:

Testimony of accomplice. — A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of

the offense; and the corroboration is not sufficient if it merely shows that the offense was committed, and the circumstances thereof.   . . .

Appellant argues that the requirements of this statute have not been met; therefore, the trial court erred in refusing to direct a verdict of acquittal for appellant. After reviewing the evidence, we conclude that appellant's contention is without merit.

The following testimony corroborates Hendrix's testimony and tends to connect appellant to the murder: Linda Wilburn, the twin sister of Hendrix's girlfriend in Chicago, testified that before appellant and Hendrix left Chicago she heard them discussing a white woman who lived in a little town in Arkansas with a safe in her house. Thomas Selvy testified that appellant asked him if the people who lived in the "big house" were wealthy and if they had dogs. He also stated that appellant told him that he was going to "hit something" before he left Joiner. Selvy also testified that he saw what he thought was a .32 caliber pistol with a brown handle in appellant's car but appellant told him it was a .38.

Selvy testified that on the night of the murder he saw the trunk light come on in appellant's car, which was parked near Barbara Williams's residence. He then saw appellant and Hendrix walk in the direction of the Bowden house. He stated that they returned on foot between 9:00 p.m. and 10:00 p.m. and that some of his family helped get appellant's car out of the mud. He also testified that appellant acted nervous and had a dark stain on his right arm.

L. F. Etter, a Joiner resident, testified that he heard a single shot between 9:30 p.m. and 10:00 p.m. Thursday, March 27. He stated that after hearing the shot he looked out his window and saw car lights on the shoulder of Highway 61. A few seconds later he saw the car start up, pull up on top of the railroad crossing, back down, and go north. Deputy sheriff Higgins testified that on April 1, 1980, Etter took him to Highway 61 to the approximate location of the car which was where he found two live .38 caliber shells and a brown piece of a broken revolver. Officer J. D. Brewer testified that

he found a pack of Benson and Hedges cigarettes and a pair of prescription glasses in the same area. The glasses matched those that the victim was wearing in her driver's license picture.

Hendrix's girlfriend, Brenda Wilburn, testified that two or three days after Hendrix returned to Chicago she heard appellant tell Hendrix to burn his clothing which could be evidence. She saw Hendrix carry some clothes to the incinerator. She also stated that she saw some green gloves which appellant and Hendrix brought back to Chicago. Chicago police officer James Hunt testified that he found a .25 shell casing and a pair of greenish blue plastic surgical gloves in a search of appellant's car.

We have consistently held that corroborating evidence need not be sufficient in and of itself to sustain a conviction, but need only, independently of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the crime. *King* v. *State*, 254 Ark. 509, 494 S.W.2d 476 (1973). The above testimony clearly connects appellant to the murder; therefore, the trial court did not err in submitting the question of the sufficiency of the corroboration to the jury.

Appellant also argues that the elements of robbery or attempted robbery were not proven other than by the testimony of the accomplice and, therefore, the trial court erred in not submitting the case to the jury on a lesser homicide offense. We disagree. Hendrix's testimony as to appellant's intent to commit a robbery was sufficiently corroborated by the testimony of Thomas Selvy and Linda Wilburn, as set out above.

Lastly, appellant argues that the trial court erred in admitting into evidence certain photographs depicting the victim's wounds, alleging they had no probative value and were inflammatory. Our cases hold that a trial court's decision on the admissibility of photographs will be reversed only if there is a clear abuse of discretion. *Gruzen* v. *State*, 267 Ark. 380, 591 S.W.2d 342 (1979); *Lee* v. *State*, 229 Ark. 354, 315 S.W.2d 916 (1958). Here, the photographs at

issue were introduced during the testimony of the medical examiner and were used to aid the jury in understanding the testimony. Under these circumstances we cannot say the trial court abused its discretion in admitting the photographs.

We have examined the record for additional errors not argued by defense counsel, who was appointed for purposes of this appeal, but finding none prejudicial, affirm the conviction and punishment.

Affirmed.