Craig RHODES *v.* STATE of Arkansas

CR 83-28                                      655 S.W.2d 421

Supreme Court of Arkansas
Opinion delivered July 11, 1983

*Eddie Spitzer,* for appellant.

*Steve Clark,* Atty. Gen., by: *Victra L. Fewell,* Asst. Atty. Gen., for appellee.

STEELE HAYS, Justice. Appellant Craig Rhodes, along with Kathy York, was charged with capital murder. The jury found both guilty of first degree murder with York sentenced to life imprisonment and Rhodes to a term of forty years. Rhodes appeals that conviction, alleging four errors for reversal.

The facts given by York and Rhodes agree in some respects and differ primarily as to the commission of the crime. Each said that on the night of the murder they had been at a bar drinking with acquaintances. They left the bar

with a third person, Cecile Nelson, in a car that belonged to Liz Farrell. Because there was talk of robbery, Nelson asked to be let out of the car. York and Rhodes went to the trailer of the victim, Hubert Gibson. York knew the victim, though appellant did not, and York says she intended to borrow money from him. At this point, the two accounts differ. York testified that the appellant entered the trailer first, and she followed, finding Gibson lying in bed; that Gibson yelled and appellant began hitting him and then put a pillow over his face and asked York to bring him a knife. York said she brought a knife and that appellant pressed the dull side of the knife against Gibson's throat, that she then took the knife and stabbed the victim in the chest. According to the coroner's testimony Gibson died of knife wounds and strangulation from a blunt object. Appellant's version varies in that he testified that he only stepped into the trailer for a moment and then waited outside until York came out a few minutes later.

Appellant first charges error in the court's refusal to sever his trial from the co-defendant. He argues that under our ruling in *McDaniel and Gookin* v. *State,* 278 Ark. 631, 648 S.W.2d 57 (1983) his motion should have been granted. We find the argument to be without merit.

We stated in *McDaniel* that ordinarily the question of severance is a matter of discretion with the trial court, but there are a number of elements that must be considered to determine if there has been an abuse of discretion. The issue of severance is to be determined on a case by case basis considering the totality of their circumstances. With regard to antagonistic defenses, which is the thrust of appellant's argument, we stated that:

> We do not suggest that simply because defenses are antagonistic the trial court must grant severance or risk reversal, merely that where the defenses are antagonistic, particularly in capital cases, careful consideration should be given to *all* the factors which weigh for or against achieving substantial justice in the trial process, and where it can be seen that either defendant

is unduly jeopardized by a joint trial, severance should be granted. *McDaniel* at 639.

Of the seven factors listed in *McDaniel* (at 638) there appear to be only two that give us pause for consideration: 1) where the defenses are antagonistic; 2) where one defendant chooses to testify, the other is compelled to do so. Although we did not set out any specific definition of what constituted antagonistic defenses, the facts in *McDaniel* present a materially different conflict than arises here. In *McDaniel,* and other cases cited therein, an irreconcilable situation presented itself when each defendant denied involvement in the crime and put the blame on the other. Here, the co-defendant readily admitted her participation in the murder and Rhodes did not even argue antagonistic defenses to the trial court. There was no attempt by York to absolve herself by accusing Rhodes. York's testimony against him was simply part of cumulative evidence of his participation in the crime. The jury was not put in the same predicament as it was in *McDaniel* of resolving mutually exclusive defenses, with the potential for putting the entire blame on the wrong individual. Nor did the findings of the jury here reflect the obvious quandry the *McDaniel* jury was in when it returned a verdict of life without parole for both defendants, but the verdict forms as to mitigating circumstances for each defendant indicated that "the capital murder was committed by another person and [McDaniel/Gookin] was an accomplice and his participation was relatively minor". We do not find the defenses here antagonistic.

The other element mentioned does not, standing alone, compel us to find that under the totality of the circumstances, severance was necessary in this case to achieve substantial justice.

Another contention is that it was error to refuse to allow twelve peremptory challenges to both defendants. We have only recently considered this argument and found it wanting. *Clines, et al* v. *State,* 280 Ark. 77, 656 S.W.2d 684 (1983), decided July 5, 1983.

Appellant next contends that the court erred in refusing to grant a mistrial because witnesses were permitted to testify to out-of-court statements by York which referred to appellant and were inadmissible against him. Although both statements were potentially inadmissible, we find that any error was harmless and produced no prejudice to the appellant. One statement was made by Liz Farrell that York told her that after she had stabbed Gibson, she and Rhodes ran from the trailer and Rhodes picked up the knife. This statement implicates appellant no more than he already admits, other than the fact that he picked up the knife. But the statement in fact supports his version of the case and tends to exonerate him by York's admission of the crime. The other statement was made by a Texas police officer who testified to a statement made by York while en route to the city jail, that she knew about a murder, that she was there and knew who did it, a black male companion. York had initially given a statement to police indicating that the appellant had murdered the victim, but she gave a later statement to police that she had stabbed Gibson and admitted on the stand, *after* the officer testified, that she had lied in her initial statement to the police. We can see no clearer removal of prejudice than the declarant herself admitting her initial statement blaming the appellant was false.

Appellant's last argument raises the issue that there was insufficient testimony to corroborate the accomplice testimony as required by Ark. Stat. Ann. § 43-2116 (Repl. 1977), requiring that accomplice testimony must be corroborated by other evidence which *tends* to connect the accused with the commission of the crime. We have held that it is unnecessary that the evidence be sufficient to sustain the conviction, but it must, independent of that of the accomplice, tend to a substantial degree to connect the defendant with the commission of the crime. *Henderson* v. *State*, 279 Ark. 435, 652 S.W.2d 16 (1983); *Rhodes* v. *State*, 276 Ark. 203, 634 S.W.2d 107 (1982). We stated in *Henderson* that the test for determining the sufficiency of the corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and tends to

connect the accused with its commission. In both *Henderson* and *Rhodes,* the independent evidence connected the defendant with the crime at the time and place the crime was committed, and in *Henderson,* circumstances supported a connection between the defendant and the murder weapon. In this case, the evidence is undisputed that the appellant was at the scene of the crime, by his own admission. The jury had that admitted fact to consider, whereas in *Henderson* and *Rhodes* there was sufficient corroboration when there was only direct and circumstantial evidence or testimony of *others* to connect the defendant with the crime. The jury also had before it the testimony of the coroner as evidence which connected appellant to the victim, and the fact that the appellant was able to lead the police to the place where the murder weapon was disposed of. Applying the standards set out in *Henderson* and *Rhodes* and comparing the quantum and quality of evidence in those cases to the case before us, we cannot say as a matter of law there was insufficient evidence to corroborate the accomplice's testimony.

Affirmed.