Norma FOSTER *v.* STATE of Arkansas

CR 86-139                                    720 S.W.2d 712

Supreme Court of Arkansas
Opinion delivered December 15, 1986
[Supplemental Opinion on Denial of Rehearing
February 9, 1987.*]

*James C. Cole*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Blake Hendrix*, Asst. Att'y Gen., for appellee.

JOHN I. PURTLE, Justice. The appellant was convicted of murder in the first degree at her third trial. Her first trial resulted in a conviction which we reversed and remanded for a new trial. See *Foster* v. *State*, 285 Ark. 363, 687 S.W.2d 829 (1985). A mistrial was declared in the second trial. The appellant makes many arguments on appeal, but we reach only the argument that there was no corroboration of the accomplices' testimony. We do not find any evidence in the record to corroborate the accomplices' testimony as required for a conviction under the law; therefore, we must reverse her conviction and dismiss this case.

The appellant was charged as an accomplice of Patricia

---

*Hickman and Hays, JJ., concur.
Glaze, J., not participating.

Hendrickson, and others, in the murder of Orin Hendrickson, the husband of Patricia Hendrickson. The conviction of Patricia Hendrickson for capital murder has recently been affirmed by this Court. See *Hendrickson* v. *State*, 290 Ark. 319, 719 S.W.2d 420 (1986).

Since we base our decision on the fact that there was no corroboration of the testimony of Mark Yarbrough or Howard Vagi, both accomplices, we find it unnecessary to recite all the facts. Instead, we have searched the record for testimony and/or other evidence, other than the testimony of Yarbrough and Vagi, which might tend to connect the appellant to the murder. Howard Vagi, now serving time for the murder of Orin Hendrickson, testified at the third trial. However, after a careful study of his testimony we conclude that he gave no testimony which tended to indicate guilty knowledge on the part of Norma Foster. The other accomplice, Mark Yarbrough, although not charged with any crime, testified at length and did implicate the appellant. It is corroborating evidence of this testimony for which we have searched the record in vain.

We have searched the entire record and find only two incidents which could be considered in any manner corroborative of the accomplices' testimony. The first event which the state argues corroborates the accomplices' testimony is that the appellant called Patricia Hendrickson's employer, Mr. Roberson, from the scene of the murder after discovery of the body. The appellant had gone home with her friend, Pat Hendrickson, when the body was discovered by them. Several phone calls, including calls to the police and sheriff departments, were made before the one to Roberson. Roberson testified Foster stated, "Get out here quick, Orin's been shot." It would have been unusual for the appellant not to have realized that the victim had been shot. The photographs introduced into evidence show clearly the general nature and extent of the wounds. The pictures also show that buckshot had struck the refrigerator and the area nearby. This statement to Hendrickson's employer is in no way incriminating, and there is nothing in the record which tends to prove that the statement had any independent meaning which reflected any prior knowledge by the appellant of the murder.

The other possible corroborating evidence is the fact that

Vagi's motorcycle was seen parked at the appellant's residence some eight months after the murder. Both Yarbrough and Vagi testified that the appellant had no knowledge that the motorcycle had been used to aid in the murder. In fact, it seems undisputed that the cycle was parked there with her permission because there was no place to park it on the university campus. The parking of a motorcycle does not tend to connect the appellant with the murder. Other than the accomplices' testimony there is no evidence that the vehicle was in any manner connected with the crime in this case.

We have examined the testimony of all other witnesses, including the medical examiner, and find no corroborating evidence of the accomplices' testimony. No witness, other than Vagi, was present at the murder. Nor has any witness testified that the appellant, any other alleged accomplice or the motorcycle was seen at or near the scene of the crime.

■ Even if we consider the record in her first conviction, stripped of inadmissible evidence, we cannot find evidence, direct or circumstantial, which tends to connect the appellant to the crime. This rule of law is not new and it is not judge-made law. The statute upon which we base this decision has remained essentially in its present form since 1883. Ark. Stat. Ann. § 43-2116 (Repl. 1977) states:

> 43-2116. Testimony of accomplice. — A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed, and the circumstances thereof. Provided, [t]hat in misdemeanor cases a conviction may be had upon the testimony of an accomplice.

■ We have construed this statute many times, and we have held that the testimony of an accomplice standing alone is insufficient to support a conviction. See *Bly* v. *State*, 267 Ark. 612, 593 S.W.2d 450 (1980); and *Gardner* v. *State*, 263 Ark. 739, 569 S.W.2d 74 (1978), cert. den. 440 U.S. 911 (1979). Testimony of an accomplice is insufficient to justify conviction of a

felony, even though the court and jury believed his testimony. *Griffin* v. *State*, 172 Ark. 606, 289 S.W. 765 (1927). The test for determining the sufficiency of corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Henderson* v. *State*, 279 Ark. 435, 652 S.W.2d 16 (1983). See also *Burnett* v. *State*, 262 Ark. 235, 556 S.W.2d 653 (1977), cert. den. 435 U.S. 944 (1978); and *Olles* v. *State*, 260 Ark. 571, 542 S.W.2d 755 (1976).

There are very good reasons for requiring corroboration of accomplice testimony. The justification can readily be seen in a case such as this one. Mark Yarbrough admittedly participated in planning and executing the murder. He testified that the appellant was an accomplice. However, he was told by the prosecuting attorney that he would not be charged with any crime if he testified. In testifying against the appellant, he was keeping his promise to the prosecutor. Therefore, it becomes obvious why corroboration of accomplice testimony is essential.

The rule requiring corroboration is not in existence to protect the guilty nor is the statute to be applied only in specific cases. The reason for the rule is that the instinct for survival renders the testimony of an accomplice less than completely credible. The central idea of the rule is to prevent a person from being convicted solely upon false testimony. To allow a conviction to stand based solely upon the testimony of an accomplice would likely result in the conviction of innocent people.

We have searched the entire record and have found nothing to support the accomplices' testimony; therefore, we reverse the conviction and dismiss the charge in this case.

Reversed and dismissed.

Supplemental Opinion on Denial of Rehearing
February 9, 1987

722 S.W.2d 869

PER CURIAM. The appellee complains that we should remand this case rather than dismiss it. It is argued that we misinterpreted two United States Supreme Court decisions when, in *Pollard* v. *State*, 264 Ark. 753, 574 S.W.2d 656 (1978), we held we were required to dismiss when we found the state's evidence insufficient due to lack of corroboration of an accomplice.

The appellee says that neither *Burks* v. *United States*, 437 U.S. 1 (1978), nor *Greene* v. *Massey*, 437 U.S. 19 (1978), was a case in which the insufficiency of the evidence resulted from failure to corroborate an accomplice's testimony. *Greene* v. *Massey, supra*, applied to the states the holding of *Burks* v. *United States, supra*, that it would be double jeopardy to try an accused again after having failed to produce sufficient evidence at the first trial. The appellee argues that the rule of those cases applies only when the state has failed to produce sufficient evidence to permit the jury to find guilt beyond a reasonable doubt. The extension of that argument is that the rule does not apply when the evidence of guilt is sufficient to pass a constitutional challenge but fails only because of a statutory requirement such as that found in Ark. Stat. Ann. § 43-2116 (1977) requiring corroboration of the testimony of an accomplice.

We might agree with the appellee's technical basis for saying the Supreme Court cases could be limited to their facts. However, that would ignore the reasoning expressed in *Burks* v. *United States, supra*. There the prosecution had failed to produce sufficient evidence of the sanity of the accused as it was required to do after insanity had been raised as a defense. The court of appeals reversed on that basis and remanded for a new trial. The Supreme Court reversed on the traditional distinction between error at trial which permits retrial and failure of the prosecution's evidence which requires dismissal. Writing for a unanimous Supreme Court (Mr. Justice Blackmun not participating) Mr. Chief Justice Burger pointed out that when reversal comes about

through error, ". . . the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished." 437 U.S. at 15. He continued:

The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble. Moreover, such an appellate reversal means that the government's case was so lacking that it should not have even been *submitted* to the jury. Since we necessarily afford absolute finality to a jury's *verdict* of acquittal—no matter how erroneous its decision—it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty. [437 U.S. at 16, footnote omitted]

██ Thus it is clear to us that if the United States Supreme Court were reviewing the case before us now it would hold, as we now hold, that if under our law an accused must be acquitted if the state's case is based on the uncorroborated testimony of an accomplice, then that determination on appeal prohibits retrial just as it does when acquittal occurs at the trial. The reason for reversal is not "error" but insufficiency of the state's proof.

The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials. The Clause does not allow "the State . . . to make repeated attempts to convict an individual for an alleged offense," since "[t]he constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green* v. *United States*, 355 U.S. 184, 187 (1957); see *Serfass* v. *United States*, 420 U.S. 377, 387-388 (1975); *United States* v. *Jorn*, 400 U.S. 470, 479 (1971). [437 U.S. at 11]

Rehearing denied.

HICKMAN and HAYS, JJ., concur.

GLAZE, J., not participating.