Kenneth Scott ANDREWS *v.* STATE of Arkansas

CR 90-263                                     807 S.W.2d 917

Supreme Court of Arkansas
Opinion delivered April 22, 1991

*Gibbons Law Firm*, by: *David L. Gibbons*, for appellant.

*Winston Bryant*, Att'y Gen., *Jeffrey Vining*, Asst. Att'y Gen. for appellee.

DAVID NEWBERN, Justice. The appellant, Kenneth Scott Andrews, appeals from his conviction of first degree murder for which he received a sentence of 40 years imprisonment. His sole point of appeal is that there was insufficient evidence to convict him. More specifically, he contended in a motion for directed verdict at the conclusion of the State's evidence that the testimony of an alleged accomplice was not corroborated by independent evidence showing that he was connected with the crime. We affirm the conviction because of Andrews's failure to renew his directed verdict motion at the conclusion of all of the evidence in the case.

Danny Jordan testified in great detail about the crime and

the participation of Kenneth Scott Andrews (Scott) and Scott's father, Joe Kenneth Andrews (Joe). Jordan told of helping move a safe from a jewelry store to the home of the victim James Robinson. He told Joe about the safe, and Joe expressed interest in stealing it. At one meeting where Joe, Scott, and Jordan were present, Scott announced that he would get the safe even if the others would not do it. On February 19, 1990, the three went to Dardanelle State Park in Joe's father's green and white pickup truck to observe Robinson's house. Jordan said they stayed there a whole afternoon and planned to steal the safe which they would then bury in the Andrews' yard.

Jordan testified further that on the afternoon of February 20 he was at home visiting with his mother when Joe and Scott arrived in the green and white truck. When Jordan's mother left, at about 4:00 p.m., the three men drove to the park in the truck and watched Robinson's home until a hired person working around the house left at about 5:30 p.m. Joe gave Jordan and Scott each a pair of white gloves to wear while taking the safe. They then drove to Robinson's home. Jordan stayed in the driveway with the truck while Joe and Scott went into a carport. Jordan then heard choking sounds and Scott waved to him to come to the carport where Jordan saw Robinson lying atop an air conditioner.

Jordan said that when he and Scott attempted to enter a shop area to get the safe, they tripped a burglar alarm. As Jordan and Scott were running back to the truck, Jordan looked back and saw Joe with his hand on Robinson's chest, but he did not see a knife. Joe, who had blood on his hands, got in the truck and told Jordan and Scott that he had choked Robinson with a rope and stabbed him two or three times. They then drove to Delaware Park. Joe had Robinson's wallet from which he gave Jordan $100 and Scott $95, keeping $95 for himself.

Danny Jordan's mother, Wilma Jordan, testified that Danny Jordan and Joe Andrews were good friends. She was at Danny Jordan's home on the afternoon of February 20 when Joe and Scott Andrews pulled up in a green pickup truck. She left them there together at around 3:45 or 4:00 that afternoon.

James Warren testified that, on February 20 at 5:30 p.m., he saw three men in the park where he was jogging. The three were

looking south toward Robinson's home. He also saw a green pickup truck near the men.

Sandra Rackley testified she saw her brother, Danny Jordan, and Joe Andrews together at 8:00 p.m. on February 20.

Carrie Payton testified that Scott Andrews came to the Gum Log area, on February 20 between 5:30 and 6:00 p.m., where her mother's and her grandmother's homes were. On cross-examination she stated it could have been 6:30 or 7:00 p.m. as she had said in an earlier statement to the police. She testified Scott told her he had almost $100. He offered to give her $5.00, and the following day he brought her a bottle of champagne, a dozen roses in separate vases, and a stuffed animal.

Carrie Payton's mother testified that, in addition to the items Carrie mentioned, Scott brought her a small "promise ring" with a diamond in it.

Jean Andrews, wife of Joe, testified that Scott was unemployed and had been since November. Another witness testified that Scott had done odd jobs for her but that she had paid him no more than $50 the week prior to February 20.

Police officers testified they arrested Scott on suspicion of having killed Robinson. When arrested, Scott was at an outdoor "beer party" where people under age were drinking. When the officers began looking through the crowd for Scott, he attempted to move toward the edge of the group, and when they approached him, he began to run but was tackled after taking about six strides. He was given a rights warning and placed in the officers' car. One officer asked the other if Carrie was at the party, and Scott volunteered a statement that she was not involved in "this mess" and there was no reason for her to be.

■■ A felony conviction may not be based on the testimony of an accomplice unless it is "corroborated by other evidence tending to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof." Ark. Code Ann. § 16-89-111(e)(1) (1987). "The test for determining the sufficiency of corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and

tends to connect the accused with its commission." *Foster* v. *State*, 290 Ark. 495 at 498, 720 S.W.2d 712 at 713-14 (1986).

The question presented to the trial court at the close of the State's case by motion for directed verdict was whether the corroborating evidence met the statutory requirement, that is, whether it was sufficient to establish the commission of the offense and connect Scott Andrews with it. The trial court denied the motion.

■ No motion for a directed verdict was made by the defendant at the close of the case. Arkansas R. Crim. P. 36.21(b) provides:

> Failure to Question the Sufficiency of the Evidence. When there has been a trial by jury, the failure of a defendant to move for a directed verdict at the conclusion of the evidence presented by the prosecution and at the close of the case because of insufficiency of the evidence will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the jury verdict.

The sufficiency of the evidence issue was thus waived by failure to move for a directed verdict at the close of the case, and we decline to consider the issue on appeal. *Thomas* v. *State*, 303 Ark. 210, 795 S.W.2d 917 (1990); *Houston* v. *State*, 299 Ark. 7, 771 S.W.2d 16 (1981).

The State has not argued that Scott Andrews failed to make the motion. Counsel for Andrews quite properly called the problem to our attention in oral argument but contended that the rule should not apply in this case because none of the evidence presented by Andrews could have influenced the court's decision to deny the motion for directed verdict for lack of corroboration which was made at the close of the State's evidence. No authority was cited for this argument, and we are not convinced by it.

The Reporter's Note to Rule 36.21(b) states that the Rule was amended in 1988 to include the requirement that the directed verdict motion be made at the close of all the evidence to bring the practice in line with that in civil cases. The civil Rule is found at Ark. R. Civ. P. 50(e). In civil cases we hold that a defendant's presentation of evidence after denial of his or her directed verdict motion constitutes a waiver of the question whether the evidence

is sufficient to go to the jury. *Higgins* v. *Hines*, 289 Ark. 281, 711 S.W.2d 783 (1986); *Granite Mountain Rest Home* v. *Schwartz*, 236 Ark. 46, 364 S.W.2d 306 (1963).

In *Sanson* v. *Pullum*, 273 Ark. 325, 619 S.W.2d 641 (1981), we referred to the requirement of renewal of the motion as a "settled rule," and we explained that:

> If a defendant could introduce evidence without waiving his first motion for a directed verdict, he could supply the very defect complained of and still obtain a new trial after having speculated upon the possibility of a favorable verdict upon all the proof.

Rule 36.21 could not be clearer, and we are not inclined to make an exception to it which would require us to evaluate whether a defendant's evidence, or perhaps evidence brought out by the State on cross-examination of the defendant's witnesses, makes a difference in whether a verdict should be directed, especially when the trial court has been given no opportunity to make such a decision.

Affirmed.

BROWN, J., concurs.

ROBERT L. BROWN, Justice, concurring. I concur in the majority's opinion and regret that a procedural failing precludes us from considering whether the evidence in this case includes sufficient evidence to corroborate an accomplice's testimony. The parties are at odds over the test for sufficient corroborative evidence. The appellant argues that such evidence must be independent evidence which can sustain a conviction separate and apart from the accomplice's statement. The Attorney General submits that corroborative evidence may merely be evidence verifying those facts asserted by the accomplice. Our past cases confirm that neither party hits the mark. The importance of this issue mandates some discussion of it.

Arkansas law requires that the corroborative evidence tend to connect the defendant with the commission of the crime. Ark. Code Ann. § 16-89-111 (1987). Corroboration is not sufficient, if it merely shows that the crime was committed and the circumstances of the crime. *Id.* We have held that the "corroboration

must be sufficient standing alone to establish the commission of the offense and to connect the defendant with it." *Johnson* v. *State*, 303 Ark. 12, 17, 792 S.W.2d 863, 865 (1990); *David* v. *State*, 295 Ark. 131, 140, 748 S.W.2d 117, 122 (1988). The corroborative evidence must be substantial evidence which is stronger evidence than that which merely raises a suspicion of guilt. *Henderson* v. *State*, 279 Ark. 435, 652 S.W.2d 16 (1983). Circumstantial evidence qualifies as corroborating evidence but it, too, must be substantial. *See David* v. *State, supra.* However, corroboration need not be so substantial in and of itself to sustain a conviction. See *Rhodes* v. *State*, 280 Ark. 156, 655 S.W.2d 421 (1983); *Walker* v. *State*, 277 Ark. 137, 639 S.W.2d 742 (1982).