Greg HOGUE *v.* STATE of Arkansas

CR 95-985                          915 S.W.2d 276

Supreme Court of Arkansas
Opinion delivered February 19, 1996
[Petition for Rehearing denied April 15, 1996.*]

* GLAZE and ROAF, JJ., would grant.

*William R. Simpson, Jr.*, Public Defender, by: *Latrece Gray*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Deputy Att'y Gen., Sr. Appellate Advocate for appellee.

ROBERT L. BROWN, Justice. Appellant Greg Hogue appeals his capital murder conviction on grounds that the evidence was insufficient to support the judgment. We disagree and affirm the judgment.

On February 22, 1994, Jess Brown was working at Rocky's One Stop, a convenience store located at the corner of John Barrow Road and Asher Avenue in Little Rock, which he owned. Sometime after 10:00 p.m., another employee, Marcus Hall, returned to the convenience store to buy batteries for a remote control device. He warned Jess Brown that he had seen two men standing by the laundromat near the store and that one of them was wearing a white scarf over his face. He said they ran off after seeing him.

Shortly after that, two men entered the store. One of them fired a shot which hit Jess Brown in the mid-chest region. The men fled the store after the shot was fired and were seen leaving the area in a white car with a dark roof. Jess Brown lived long enough to call 911 but later died from the gunshot wound.

Greg Hogue was ultimately charged with capital felony murder in the shooting death of Jess Brown with aggravated robbery as the underlying felony. A jury trial was held at which Mark Poindexter was the principal State witness. He testified that he hosted a party on February 22, 1994, and that Greg Hogue, Damion Brown, Harold Olive, and Anthony White were there, among others. He testified that Anthony White suggested they commit a robbery. Shortly after that, Poindexter left with Hogue, Damion Brown, White, and Olive to commit the robbery. They used his car — a white Delta 88 Oldsmobile — for transportation. Before they reached the site for the robbery, White "chickened out," according to Poindexter, and jumped out of the car. When they reached their destination, they got out of the car and took the guns, a .38 revolver and a .380 semiautomatic pistol, out of the trunk. Poindexter testified that Hogue put on a red ski mask, and Damion Brown put a white rag over his face. Hogue and Damion Brown left and walked to the store. Approximately five to ten minutes later, Poindexter heard a gunshot. Hogue and Damion Brown returned to the car, and the group left. Damion Brown told Poindexter that he had dropped the gun. Poindexter testified that Hogue got out of the car somewhere on Barrow Road and that he, along with Damion Brown and Olive, returned to the party.

At the close of the State's case-in-chief, Hogue's counsel moved for a directed verdict specifically on grounds that the only connection between Hogue and the events of February 22, 1994, was through the testimony of accomplices and that there was not sufficient independent evidence to connect him to the crime. The trial court stated that Mark Poindexter was obviously an accomplice but found that other evidence presented tended to connect Hogue to the murder. Hogue's counsel then argued that it was Hogue's position that two corroborating witnesses were also accomplices and, thus, their testimony could not connect Hogue to the crime. The court ruled otherwise and denied Hogue's motion for a directed verdict. The defense rested without calling any witnesses. The jury returned a verdict of guilty on the charge of capital felony murder. Following the penalty phase of the trial, Hogue was sentenced to life in prison without parole.

Hogue raises only one issue on appeal. He claims that there was insufficient evidence to support his conviction for capital fel-

ony murder and further maintains that adequate evidence corroborating the testimony of Mark Poindexter, the accomplice, was lacking. Because the sole ground given for his directed verdict motion was the absence of sufficient corroborative proof, that is the only ground preserved for our review. *Walker* v. *State*, 318 Ark. 107, 883 S.W.2d 831 (1994). Contrary to what he contended before the trial court, Hogue does not argue on appeal that state witnesses, other than Poindexter, occupied the status of an accomplice.

■ Hogue is correct that when accomplice testimony is involved, our law requires that there be independent, corroborative evidence "tending to connect the defendant with the commission of the offense." Ark. Code Ann. § 16-89-111(e)(1) (1987). The State's retort to this is that Hogue failed to request an instruction informing the jury (1) Mark Poindexter was an accomplice as a matter of law, and (2) it was necessary for the State to produce evidence connecting Hogue to the crime, independent of Poindexter's testimony. By failing to ask for the instruction, according to the State's theory, Hogue waived this argument. The State cites several cases in support of its argument. *See Rockett* v. *State*, 319 Ark. 335, 891 S.W.2d 366 (1995); *Pilcher* v. *State*, 303 Ark. 335, 796 S.W.2d 845 (1990); *Moser* v. *State*, 266 Ark. 200, 583 S.W.2d 15 (1979); *Odom* v. *State*, 259 Ark. 429, 533 S.W.2d 514 (1976); *see also, McDonald* v. *State*, 37 Ark. App. 61, 824 S.W.2d 396 (1992).

■■ We do not agree with the State's analysis of our cases. We have stated that a defendant must either have the trial court declare a person an accomplice as a matter of law or submit the issue to the jury for determination. *See, e.g., Rockett* v. *State, supra*; *Clements* v. *State*, 303 Ark. 319, 796 S.W.2d 839 (1990). But we have not required the defendant to do both in order to preserve the issue of an erroneous denial of a directed verdict motion. In the case at bar, there was a finding by the trial court that Poindexter was an accomplice. The court also found that there was sufficient corroborative evidence, and it denied the motion for directed verdict. As a result, the issue of whether the trial court properly denied the motion did not depend on whether a subsequent instruction was requested involving the same legal point. We conclude that Hogue preserved the issue of whether the trial court erred in declining to

direct a verdict on insufficient *corroborative* evidence.

■ We must then decide whether sufficient evidence tending to connect Hogue to the crime, apart from Mark Poindexter's testimony, was presented, as required under § 16-89-111(e)(1). We have held that the corroboration must be sufficient standing alone to establish the commission of the offense and to connect the defendant with it. *Daniels* v. *State*, 308 Ark. 53, 821 S.W.2d 778 (1992); *Andrews* v. *State*, 305 Ark. 262, 807 S.W.2d 917 (1991); *Johnson* v. *State*, 303 Ark. 12, 17, 792 S.W.2d 863, 865 (1990); *David* v. *State*, 295 Ark. 131, 140, 748 S.W.2d 117, 122 (1988). The corroborative evidence must be substantial evidence which is stronger evidence than that which merely raises a suspicion of guilt. *Henderson* v. *State*, 279 Ark. 435, 652 S.W.2d 16 (1983). Circumstantial evidence qualifies as corroborating evidence but it, too, must be substantial. *See David* v. *State, supra.* But corroboration need not be so substantial in and of itself to sustain a conviction. *See Rhodes* v. *State*, 280 Ark. 156, 655 S.W.2d 421 (1983); *Walker* v. *State*, 277 Ark. 137, 639 S.W.2d 742 (1982).

Here, there is enough evidence to connect Hogue to the crime. First, there is the testimony of Marcus Hall, the employee of Rocky's One Stop, who testified that he saw two men over by the laundromat next to Rocky's One Stop. One of them had a white scarf that covered his mouth and nose. They ran when they saw him, and he told Jess Brown about them. Jess Brown and Hall then walked behind the counter to find the batteries to fit Hall's remote control device. While Hall was bent down behind the counter, Jess Brown was shot. The events in the store were confirmed by the surveillance video which was introduced into evidence, although an identification of the men could not be made.

Dr. Peretti, a State medical examiner, confirmed that Jess Brown had been shot in the chest and testified that he died as a result of that wound.

Daniel Reed, a neighbor in the area, testified that as he was taking out his garbage on the night of the murder, he heard a gunshot. When he looked up, he saw two men running across the laundromat parking lot, which is next to Rocky's One Stop. They got into a white car with a dark roof, possibly an Oldsmo-

bile, which was parked in the parking lot of the Optimist Club and drove away going east on Asher Avenue. The car did not have any license plates. He testified that one of the men was wearing a red ski mask and the other was wearing a white one. He testified that the man wearing the red ski mask was a few inches taller than the other.

Detective Mike Durham of the Little Rock Police Department testified that Greg Hogue's height was approximately 6' to 6'1, while Damion Brown was 5'9".

Alfreda Jackson testified that she went to a party at Mark Poindexter's house on the night of the murder. She said that Mark Poindexter, Damion Brown, Harold Olive, and a person named "Greg" left the party at the same time she did. They followed her car until they reached Asher Avenue. She lost sight of them after that. She later returned to the party, and Poindexter, Damion Brown, and Olive were there, but "Greg" was not.

Dadtrick Arnold testified that he was at the party on the night of the murder. He stated that he overheard a conversation among Greg Hogue, Damion Brown, and Harold Olive in which they discussed "making a lick," which meant a robbery. He testified that Hogue, Damion Brown, Olive, and Poindexter left approximately an hour later in Poindexter's white car. He testified that there were guns at the party, a .380 semiautomatic pistol and .38 revolver, and that Anthony White had one and that either Damion Brown or Olive had the other. Olive had a pair of brown gloves. Arnold also testified that he told Little Rock police officers that Hogue had a red ski mask with him that night.

Myron McClendon testified that he, too, was at the party the night of the murder. While there, he saw a .38 revolver and a black .380 semiautomatic pistol. Anthony White and Harold Olive had those guns. He also saw Greg Hogue with a red ski mask that night. He stated that he heard Damion Brown tell Freda Jackson and Lila Harnett that they were going to "hit a lick," which meant commit a robbery. After hearing that, Poindexter, White, Hogue, Damion Brown, and Olive left in Poindexter's white Oldsmobile.

Officer Ronnie Smith of the Little Rock Police Department testified that he recovered a red ski mask, some brown gloves, and a .380 semiautomatic pistol from Anthony White's house. Anthony White's mother, Joyce White, testified that Hogue came to her house the night of the murder and that he also returned the next morning.

Detective Don Bakelekos of the Little Rock Police Department testified that he executed the arrest warrants for Greg Hogue and Damion Brown. When the police knocked on the door and announced their presence, Hogue and Damion Brown tried to leave out the back door.

In sum, we have evidence placing Hogue in a white Oldsmobile with a red ski mask on Asher Avenue about the time the murder occurred. We have evidence that the occupants of the car were armed. We have evidence that the plan was to commit a robbery and that Hogue participated in formulating that plan. A man was seen at the crime scene wearing a red ski mask and returning to a white car that looked like an Oldsmobile after a gunshot was heard. A red ski mask was recovered by police officers at a home where Hogue had been. Hogue tried to escape when police officers announced their presence at his door. We conclude that the evidence connecting Hogue to the murder is substantial.

The record has been examined pursuant to Supreme Court Rule 4-3(h) for other reversible error, and none has been found.

Affirmed.