Robert Lynn GORDON and John Michael Priest *v.* STATE of Arkansas

CR 96-287                                          931 S.W.2d 91

Supreme Court of Arkansas
Opinion delivered September 30, 1996

*Adams & Evans*, by: *Donald J. Adams*, for appellant Gordon.

*Gardner & Putman*, by: *John Putman*, for appellant Priest.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. Robert Lynn Gordon and John Michael Priest were tried jointly for attempted capital murder and manufacture of a controlled substance. Mr. Gordon was convicted of both offenses and sentenced to 35 years' imprisonment and a $10,000 fine. Mr. Priest was convicted of manufacture of a controlled substance and was given a four-year suspended sentence. Both have appealed, and their appeals have been consolidated. We affirm Mr. Gordon's conviction as we reject his sole point of appeal having to do with alleged error resulting from improper limitation of cross-examination of a State's witness. We reverse and dismiss the conviction of Mr. Priest because we concur in his contention that the evidence against him given by an accomplice was not corroborated.

On Thursday, August 18, 1994, the Marion County Sheriff's office received a report concerning the discovery of a large marijuana plot. Investigator Carr was the first to respond to the call. Upon entering the marijuana field, Mr. Carr noticed a strand of monofilament line, a type of fishing line, running to a piece of pipe. Suspecting a trap-gun, he attempted to relay his discovery to other approaching officers. While attempting to radio the other officers, he set-off a second, unseen trap-gun which was loaded with buckshot. The resulting blast struck Mr. Carr's leg. Although severely wounded, he managed to crawl out of the field. He was found by other officers and rushed to the hospital. The officers recovered 402 marijuana plants and two trap guns constructed of galvanized pipe and rat traps.

The State's primary witness was Kenneth Godat, an accomplice. According to Mr. Godat, the marijuana plot belonged to Mr. Gordon and Mr. Priest. Mr. Godat testified that he heard the two men discussing the necessity of keeping law enforcement officials out of the plot, and that he saw the components for the trap-guns on a nearby picnic table immediately after the discussion. He claimed that he saw a trap-gun, identical to the ones found in the marijuana plot, at the cabin shared by the two men. Mr. Godat also stated that he transported the two men to the plot on the day the

trap-guns were installed. The other evidence produced by the State consisted of testimony from individuals who stated they knew the marijuana patch belonged to Mr. Gordon, that he talked of protecting it with booby-traps, and that he had a partner, although the partner was not named.

### Robert Lynn Gordon
*Scope of cross-examination*

Bill Beach, one of the investigating officers, testified he took fingerprints from a number of the suspects and submitted them to the State Crime Laboratory for comparison to prints found on the trap-guns. When questioned about the result, he stated the test was inconclusive. Officer Beach testified a laboratory technician told him "That he had found one, partial latent print on one of the [trap-guns] and that . . . as a result of his comparison to the known prints that were submitted, the print was not suitable to identify any potential suspect, there were not enough points of identification to identify one person." On cross-examination, Mr. Gordon's counsel began questioning Officer Beach about a conversation Mr. Beach had with the fingerprint examiner, Mr. Turbyfill, concerning which suspect the fingerprints most closely matched. The State's objection was sustained.

Mr. Gordon's counsel asked to make a proffer consisting of his allegation that Officer Beach would testify that Mr. Turbyfill said that he found five points on the latent print which matched the fingerprint of Brad McLean and that Mr. Turbyfill had stated the investigator should take a "hard look" at Mr. McLean as a suspect. The Trial Court stated that, if a statement by Mr. Turbyfill were admissible, Mr. Turbyfill would be the proper witness but he doubted the testimony would be admissible "under any stretch of the rule of evidence." Obviously, the Trial Court considered the testimony of Mr. Beach about what Mr. Turbyfill had told him to be irrelevant and, at best, subject to a hearsay objection on the part of the State. We note that in *Davis* v. *State,* 319 Ark. 892 S.W.2d 472 (1995), we held that a police officer's testimony about a scientific test he did not conduct was not admissible.

On appeal, Mr. Gordon contends that Officer Beach's statement concerning the inconclusive nature of the test was misleading. He submits that he should have been allowed to elicit testimony from Officer Beach that, even though inconclusive, the fingerprint

test implicated one of the other suspects and not Mr. Gordon. Mr. Gordon contends the Trial Court erred by limiting his cross-examination of a State's witness and such error amounted to a denial of his Sixth Amendment right of confrontation.

The right of confrontation provides two types of protection for defendants in criminal cases: the right to face those who testify against them and the opportunity to conduct effective cross-examination. *Gunter* v. *State*, 313 Ark. 504, 857 S.W.2d 156 (1993). The right to cross-examine is, however, not unlimited, and a trial court has wide latitude to impose reasonable limits on cross-examination based upon concerns about confusion of issues or interrogation that is only marginally relevant. *Larimore* v. *State*, 317 Ark. 111, 877 S.W.2d 570 (1994); *Bowden* v. *State*, 301 Ark. 303, 783 S.W.2d 842 (1990). We will not disturb the discretion of the trial court upon review in the absence of a showing of abuse. *Biggers* v. *State*, 317 Ark. 414, 878 S.W.2d 717 (1994).

To determine whether the restrictions placed on the right to cross-examine a witness rise to the level of a constitutional deprivation, we look to the record as a whole to determine if the restrictions imposed created a substantial danger of prejudice to appellant. *Smith* v. *State*, 310 Ark. 247, 837 S.W.2d 279 (1992); *Bowden* v. *State, supra*. Prejudice is not presumed and we will not reverse absent a showing of prejudice. *King* v. *State*, 322 Ark. 51, 907 S.W.2d 127 (1995); *Berna* v. *State*, 282 Ark. 563, 670 S.W.2d 434 (1984), *cert. denied*, 470 U.S. 1085 (1985).

In his argument, Mr. Gordon cites three cases in support of his point that his right of confrontation was erroneously curtailed. The cases are *U.S.* v. *Campbell*, 845 F.2d 782 (8th Cir. 1988), *U.S.* v. *Ferguson*, 776 F.2d 217 (8th Cir. (1985), and *Bowden* v. *State, supra*. In each of those cases convictions were affirmed, and each of the opinions emphasizes the wide discretion a trial court has in limiting cross-examination. The opinion in the *Ferguson* case makes the point that "A violation of the confrontation clause occurs only where the limitation on the cross-examination could reasonably be expected to have a substantial effect on the jury's decision."

Mr. Gordon has failed to show either an abuse of the Trial Court's discretion or any prejudice resulting from the restriction. He was allowed to question the State's witnesses concerning the existence of other suspects. Mr. Gordon's former spouse testified

that Brad McLean had been involved in growing marijuana with Mr. Gordon. Evidence that the fingerprint somewhat matched that of Mr. McLean would have added little to Mr. Gordon's attempt to show that others were suspects and might have been involved in the growing of the marijuana.

We cannot say that, absent the cross-examination Mr. Gordon's counsel wished to conduct, any implication was left with the jury that it was Mr. Gordon's fingerprint found on the trap-gun. Nor has Mr. Gordon given us any citation to any authority which would make an apparently hearsay statement, of marginal, if any, relevance, admissible because the prosecution had "opened the door." In *Stewart v. State,* 316 Ark. 153, 870 S.W.2d 752 (1994), we rejected a similar argument where the State had offered evidence that a murder victim was reputed to have been a peaceful person and the defendant wanted to offer evidence of specific acts of violence committed by the victim. We upheld the Trial Court's refusal to allow the evidence and said, "The fact that the State may have first 'opened the door' regarding the victim's character does not overcome the problem of relevancy under these circumstances."

■ The research effort displayed in the concurring opinion will undoubtedly be helpful in future cases in which there is a "fire" to be fought with a "fire." In the circumstance presented here, however, the door opened by Officer Beach's testimony resulted in no prejudice whatever to Mr. Gordon.

We affirm the judgment as to Mr. Gordon.

*John Michael Priest*
*Sufficiency of the evidence*

Mr. Priest contends the Trial Court should have granted his motion for directed verdict because the State failed to corroborate accomplice testimony as to his involvement in the manufacture of a controlled substance in violation of Ark. Code Ann. § 5-64-401(b) (Supp. 1995).

Arkansas Code Ann. § 16-89-111(e)(1) (1987) provides:

A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the com-mission of the offense. The corroboration is not sufficient if it merely shows that the offense was committed and the

circumstances thereof.

■ The corroboration must be sufficient standing alone to establish the commission of the offense and to connect the defendant with it. *Hogue v. State*, 323 Ark. 515, 915 S.W.2d 276 (1996); *Daniels v. State*, 308 Ark. 53, 821 S.W.2d 778 (1992); *Andrews v. State*, 305 Ark. 262, 807 S.W.2d 917 (1991). The test for determining the sufficiency of corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, other evidence independently establishes the crime and tends to connect the accused with its commission. *Meeks v. State*, 317 Ark. 411, 878 S.W.2d 403 (1994); *Daniels v. State, supra.*

■ The corroborative evidence must be substantial evidence, which is stronger evidence than that which merely raises a suspicion of guilt. *Hogue v. State, supra.* Circumstantial evidence qualifies as corroborating evidence, but it, too, must be substantial. *Id.* But corroboration need not be so substantial in and of itself as to sustain a conviction. *Id. See Rhodes v. State*, 280 Ark. 156, 655 S.W.2d 421 (1983).

The State contends it produced sufficient corroborating evidence through the testimony of Doug Sauers. Mr. Sauers testified he had a conversation with Mr. Gordon after Investigator Carr was wounded. According to Mr. Sauers, Mr. Gordon told him that he, Gordon, would have had plenty of marijuana if the victim had not messed things up. Mr. Sauers stated that Mr. Gordon talked about the patch as "ours" indicating that he had a partner. Mr. Sauers unequivocally denied that Mr. Gordon ever mentioned the name of his partner.

Other witnesses testified they thought Mr. Gordon had a partner, but no name was mentioned. Mark Fisk testified he went to Mr. Priest's cabin several times and observed people smoking marijuana. He also testified he heard Mr. Priest and Mr. Gordon say that Investigator Carr got what he deserved. Mr. Fisk said he did not know anything about who was growing marijuana.

■ The evidence produced by the State, other than the testimony of the accomplice, does no more than place Mr. Priest in a location where marijuana was used and the crime against Mr. Carr was discussed. That is not sufficient to satisfy the requirement of § 16–89–111(e)(1).

The judgment against Mr. Priest is reversed and the case is dismissed.

BROWN, J., concurs.

ROBERT L. BROWN, Justice, concurring. I disagree with the majority that evidence of Brad McLean's fingerprint on one of the trap-guns would have added little to Gordon's defense. The majority bases this conclusion on the fact that there was testimony from others that McLean was involved in marijuana growing. But that proof hardly equates to evidence that McLean's fingerprints were on one of the deadly devices responsible for wounding Officer Carr. Gordon's attempted defense was that someone else — Brad McLean in particular — did it. Thus, any curtailment of Gordon's ability to point to McLean as the culprit was crucial.

As the majority points out, the prosecutor opened the door to testimony about other suspects with this colloquy with Officer Beach on direct examination:

> PROSECUTOR: The technician, you were saying, explained to you what?

> BEACH: That he had found one, partial latent print on one of the devices and that ...

> PROSECUTOR: On one of the booby trap devices?

> BEACH: Yes sir, and that as a result of his comparison to the known prints that were submitted, the print was not suitable to identify any potential suspect, there were not enough points of identification to identify any one person.

> PROSECUTOR: Okay, so what he found was a partial print on one of those devices but it didn't have enough of a print to make up, sufficient points to make a comparison with the known prints you were submitting?

> BEACH: That's correct, there were not enough points to identify any one particular suspect.

This testimony by Officer Beach, which was admittedly hearsay of what the fingerprint expert told him, left the distinct impression with the jury that that expert (Ralph Turbyfill) had no suspect in mind.

On cross-examination, Gordon's counsel tried to clarify

through Officer Beach that Turbyfill had in fact matched five points on the latent fingerprints taken from the trap-gun with Brad Mc-Lean's fingerprints. The trial court refused to allow this questioning on grounds that Gordon's counsel had not objected to the first hearsay statement by Officer Beach and, as a second reason, that what counsel was now attempting to elicit was hearsay of his own.

I further take issue with the conclusion by the majority that there is no authority allowing the defense to do what it sought to do in this case. This court has recognized the principle that once a party has opened the door with inadmissible evidence, the opposing party can do likewise:

> Since *Walder*, (*Walder* v. *United States*, 347 U.S. 62 (1954)), we have recognized the propriety of "fighting fire with fire" when one of the parties opens the door with an untruthful statement, introduces inadmissible evidence, or makes an improper closing argument.

*Larimore* v. *State*, 317 Ark. 111, 121, 877 S.W.2d 570, 574 (1994); *see also Porter* v. *State*, 308 Ark. 137, 823 S.W.2d 846 (1992). That is what we have here. Officer Beach first alluded to statements by Turbyfill that were hearsay, and defense counsel, as a result, tried to correct the misleading statements by eliciting additional hearsay from the police officer. Under the authority of *Walder* v. *United States* and *Larimore* v. *State*, that is permissible.

The treatise, *Jones on Evidence*, confirms the principle:

> Evidence that is irrelevant or otherwise inadmissible, if offered by a party in the first instance, may become properly admissible to rebut or explain evidence offered by another party.

2 Clifford S. Fishman, *Jones on Evidence Civil and Criminal*, § 11:34, at 352 (7th Ed. 1994). This is known as the rule of verbal completeness. *Id*. at § 11:35; p. 355. The treatise goes on to state that while one state (Ohio) would not permit this,

> [t]he better view ... is that the "rule of completeness" permits introduction of otherwise inadmissible evidence for the limited purposes of explaining or putting other, already admitted evidence, into context, *or avoiding misleading the jury.*

*Id*. at § 11:39, p. 370. (Emphasis added.)

An analogous rule is the rule of curative admissibility which is a discretionary rule of evidence based on principles of fairness. 2 Clifford S. Fishman, *Jones on Evidence Civil and Criminal*, § 11:41, at 374 (7th Ed. 1994). The rule is described as follows:

> If one party has gotten away with a breach of the rules, sometimes the only practical way to undo the unfair advantage (other than a mistrial) is to allow the other party a compensatory breach. Thus, if one party has been allowed to present irrelevant or otherwise inadmissible evidence, the judge should allow the opposing party to present similar evidence if such is necessary to offset the unfair advantage or prejudicial effect of the earlier improper evidence.

*Id.*

Finally, I question whether Gordon's sole recourse to combat the testimony of Officer Beach was calling Turbyfill as his own witness. Our case law holds that Gordon had the right to fight fire with fire and correct the missimpression left with the jury. *See Larimore v. State, supra; Porter v. State, supra.* This rationale should apply irrespective of whether the party subsequently calls the declarant as a witness.

The issue that places me in the posture of concurring is whether a party must object to the initial hearsay. The Iowa Supreme Court says this is not necessary:

> [The] doctrine [curative admissibility] provides that when one party introduces inadmissible evidence, *with or without objection*, the trial court may allow the adverse party to offer otherwise inadmissible evidence on the same subject if it is responsive to the evidence in question.

*Lala v. Peoples Bank & Trust Co. of Cedar Rapids*, 420 N.W.2d 804, 807-808 (Iowa 1988). Nevertheless, this court has not addressed that issue, and I cannot say that the trial court abused its discretion in requiring an initial objection. For that reason, I concur in the result.