Troy Anthony VEASEY *v.* STATE of Arkansas

CR 82-8                                             637 S.W.2d 545

Supreme Court of Arkansas
Opinion delivered July 6, 1982

*Richard E. Holiman,* for appellant.

*Steve Clark,* Atty. Gen., by: *William C. Mann, III,* Asst. Atty. Gen., for appellee.

ROBERT H. DUDLEY, Justice. The appellant was tried and convicted of rape in violation of Ark. Stat. Ann. § 41-1803 (Repl. 1977) and received a thirty-five year sentence. Jurisdiction is in the Supreme Court pursuant to Rule 29 (1) (b). This appeal follows the denial of a motion for a new trial. We affirm the trial court.

The facts relating to the motion for a new trial establish that appellant's attorney stated by affidavit that two days after the trial he was in the corridor of the courthouse when Virgil Elmore, one of the jurors, approached him and said that the jury had assumed the appellant would serve considerably less than thirty-five years in prison because of the parole system. Appellant's attorney then filed a motion for a new trial, acknowledging our caveat[1] in *Sanson* v. *Pullum*, 273 Ark. 325, 619 S.W.2d 641 (1981), but alleging "the jury was given extraneous information that was improper concerning the parole system that greatly influenced the sentence to the prejudice of the defendant." A hearing was held on the motion and the trial court limited questioning to whether any extraneous prejudicial information was improperly brought to the jury's attention and whether any outside influence was brought to bear on any juror. Appellant objected to this restricted questioning and maintains that he should have been allowed to ask questions which address "the impropriety of a jury computing the sentence to be imposed on the basis of them applying one or more of their member's uninformed ideas of the workings of the parole system to compute a sentence to insure a certain actual incarceration time."

The questions and answers of Juror Elmore at the hearing on the motion for a new trial are representative of the testimony of the other jurors. They have been abstracted by appellant as follows:

My name is Virgil Elmore. I do recall sitting on the jury trial of Troy Veasey.

MR. HOLIMAN: [appellant's attorney] After you [were] seated in the box and sworn in as a jury panel, was there any extraneous or prejudicial information that was brought to bear upon your decision in that particular case?

---

[1] "We take this opportunity to state unequivocally, for the guidance of the bar, that in our opinion it is improper for a lawyer to interview jurors after a trial in an effort to obtain such inadmissible affidavits to impeach their own verdict."

MR. ELMORE: No. I simply observed and listened to the testimony and made my decision according to that testimony.

MR. HOLIMAN: Was there any outside influence brought to bear upon your decision in this particular case?

MR. ELMORE: No.

In *Andrews* v. *State*, 251 Ark. 279, 472 S.W.2d 86 (1971), we held that a trial court should not instruct a jury on the law of parole. In that opinion we stated:

> Their [the jury's] duty is to determine, within the limits of the statute, the punishment that should be meted out for the crime that has been committed, and such judgment should not be influenced by any event that might occur at some time in the future. The subject matter is entirely alien to a judicial proceeding since it is handled entirely by another department of government, the executive.

The appellant contends that *Andrews* governs the issue of discussion of parole and the subject may have been impermissibly allowed into the deliberations here. However, after *Andrews* we clarified our holding by explaining in *Woods* v. *State*, 260 Ark. 882, 545 S.W.2d 912 (1977) that a reference to the possibility of parole by a juror would not constitute reversible error:

> In *Andrews* we did not even intimate that the barest reference to the possibility of parole would be reversible error. Our holding was that the court should not attempt to explain to the jury the law governing the parole system. We adhere to that view, but no such explanation was attempted here. The challenged clause in the judgment certainly did not tell the jurors anything unknown to them, since it is hardly possible that even one person, much less twelve, old enough to serve on a jury would not know that Arkansas has a parole system.

We affirmed the *Woods* clarification in the recent case of *Ashby* v. *State,* 271 Ark. 239, 607 S.W.2d 675 (1980) and stated:

> ... If the jury or any of them, did take the possibility of parole into consideration in their determination of appellant's sentence, any information they had concerning parole was independent knowledge which they had prior to trial.

* * *

> ... It would be highly unrealistic for this court to think that jurors do not consider the possibility of parole in arriving at a sentence in a criminal case. The outward expression of that by a juror is not grounds for a new trial.

The trial court was correct in refusing to set aside the verdict of the jury even if some jurors considered the possibility of parole. Thus, appellant's argument that the trial court erred by restricting his questioning of the jurors in order to establish the jury's consideration of parole is without merit. It is also without merit for a second reason.

The type of limited questioning appealed from is authorized and controlled by Rule 606 (b) of the Unif. Rules of Evid., Ark. Stat. Ann. § 28-1001 (Repl. 1977), which provides:

> (b) Inquiry into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to asset [assent] to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received, but a juror may testify on the questions

whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

This rule states plainly that a juror may not testify as to the effect of anything upon his mind as influencing him to assent to the verdict. *Sanson* v. *Pullum,* supra. See also, *Ashby* v. *State,* supra.

Affirmed.

PURTLE, J., concurs.

JOHN I. PURTLE, Justice, concurring. I concur in the results reached by the majority only because we have previously held the same conduct to be nonprejudicial. *Ashby* v. *State,* 271 Ark. 239, 607 S.W.2d 675 (1980). However, I cannot agree with the majority if they are holding that the only two questions which may be asked of a juror are: (1) was there any extraneous or prejudicial information brought to bear upon your decision in this particular case; and, (2) was there any outside influence brought to bear upon your decision in this particular case?

I do not believe the rule was intended to be restricted to these two specific questions. In the first place, I think the average juror would not have a complete understanding of what these general questions mean. More appropriate questions might be: "did the jury consider how long the defendant would serve under the present parole system;" "did the jury cast lots to determine the number of years they would impose in this case;" or, "did the jury look at a file which was left in the jury room." If one juror influenced the other jurors because of his erroneous belief about the possibility of parole, the whole verdict could be contaminated. If we refuse to allow the court to comment on the parole system, as we did in *Andrews* v. *State,* 251 Ark. 279, 472 S.W.2d 86 (1971), then certainly a juror should not be allowed to instruct the other members of the jury on the parole system. Rule 606 (b) of the Uniform Rules of

Evidence is set out in the majority opinion; however, I would like to repeat the last part of that rule:

> . . . but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

This rule is obviously intended to be a vehicle for use when there is evidence of prejudicial or improper conduct on the part of a juror.

In the case of *Lewis* v. *Pearson,* 262 Ark. 350, 556 S.W.2d 661 (1977), we reversed the trial court because of a racist remark made by a bailiff. When an investigator's file was left in the jury room with the defendant's name on the tab, we returned the case to the trial court for a determination of whether the jurors had made use of the file. *Hutcherson* v. *State,* 262 Ark. 535, 558 S.W.2d 156 (1977). In *Lewis* we reversed and remanded even though the juror admitted hearing the slur but maintained it did not sway her opinion. In *Hutcherson* we remanded the case to the trial court for the purpose of examining the jurors about the possibility of their having examined the investigator's file. In neither of these cases would the two fixed questions allowed by the majority opinion be appropriate or sufficient to learn whether the jurors had considered matters outside the evidence presented.

I believe the purpose of Rule 606 (b) is to insure that jurors are not questioned about matters which are properly before them or about their deliberations on matters properly before them. However, the rule obviously has some further purpose, else the language used would have been omitted. The other language in the rule indicates it is proper to question jurors about matters being considered in deliberations which were improper. Of course, a juror could not be questioned until there had first been presented to the court evidence that extraneous, prejudicial or outside influence had probably been used and considered by the jury in arriving at a verdict. A wooden application of the rule which

would restrict questions to the language in the rule is not, in my opinion, required. Such a strict application would not allow a juror to be asked whether he had accepted a bribe in the case. The questions should be limited to the purpose of the rule but questions should be presented in a manner which would apprise a juror of exactly what was being inquired into.

I agree with the results reached by the majority in this case.