James TOSH *v.* STATE of Arkansas

CR 82-118                                                646 S.W.2d 6

Supreme Court of Arkansas
Opinion delivered February 14, 1983

*F. W. Jeffcoat* and *Linda Faulkner Boone*, by: *Linda Faulkner Boone*, for appellant.

*Steve Clark,* Atty. Gen., by: *Leslie M. Powell,* Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. The appellant was convicted by a jury of two counts of aggravated robbery and two counts of theft of property. Punishment was fixed at 35 years imprisonment on each robbery count and 15 years on each theft count, resulting in 50 year concurrent sentences as an habitual offender. He appeals from that judgment and denial of a motion for a new trial. We affirm.

Appellant first asserts that the jury's verdict was not supported by sufficient evidence to establish the identity of the appellant. It is argued that the testimony of the witnesses, who identified the appellant, was so contradictory, implausible and unreliable as to be insufficient to support the verdict. On appeal we review the sufficiency of the evidence to ascertain whether the verdict is supported by substantial evidence; i.e., whether the evidence is sufficient to enable the jury to reach its verdict without resort to speculation and conjecture. *Cassell* v. *State*, 273 Ark. 69, 616 S.W.2d 485 (1981). On appellate review we look only at the evidence most favorable to the appellee. *Rhodes* v. *State*, 276 Ark. 203, 634 S.W.2d 107 (1982).

Here, two of the four victims, Mr. and Mrs. Hughes, identified the appellant from photographs and a show-up at jail three weeks after the alleged offenses as one of the persons who committed the robbery and theft upon them. At trial they were certain of appellant's identification as the person who grabbed Mrs. Hughes by her hair and held a shotgun to her "throat," threatening to shoot her. Both testified that the camper tent, where they were awakened and robbed about 2 a.m., was well lit after the robbery began. Although the appellant wore a light colored woman's stocking over his face, it did not change his facial features. One of Mrs. Hughes' hobbies was art and drawing. The first thing she was taught in art school was to focus on and recognize facial features. She testified that his face was very close to hers and at one time touched hers during the threats on her life. Appellant was "mean looking, his eyes were just like the pure devil himself . . . I'll never forget his face." Mr. Hughes testified that, although appellant wore a "real light colored hose," you could "see his face good." Mr. Hughes was escorted outside to his car by other participants to get his

money and was returned to the tent where he observed the appellant holding a gun to his wife's throat. Mr. Hughes was then taken to the nearby trailer of the Isbells, who were also robbed. There appellant stood guard over Mr. Hughes during which time he further observed appellant's physical appearance. We hold there is substantial evidence to support the jury's verdict.

Appellant next argues that the trial court erred by allowing the state, in its closing argument, to place the burden of proving innocence on the appellant and by calling attention to the appellant's failure to testify. The appellant's girl friend had testified as an alibi witness that the appellant had spent the night with her on the date of the robbery and that two other persons were present with her and the appellant on that evening. In the closing argument, the prosecutor attacked the credibility of this witness, the plausibility of her testimony, and, in the course of that portion of the argument, remarked that neither of the other two persons allegedly present with appellant had been called to testify. Defense counsel objected saying, "I think this is going a little too far." His objection was overruled.

In order to preserve a point for appellate review, "[a]n objection must be sufficiently specific to apprise the trial court as to the particular error complained of in order to preserve the right to appellate review." *Crafton* v. *State,* 274 Ark. 319, 624 S.W.2d 440 (1981). A.R.Crim.P., Rule 36.21. Here, that requirement was not met. Obviously, the trial court was not afforded an opportunity to rule on the arguments now presented on appeal.

Appellant next contends that the use of standard verdict forms in this bifurcated trial violated his Fifth Amendment right not to testify against himself. The argument is that experienced jurors know that punishment is fixed at the same time as guilt, except in habitual offender proceedings, where guilt alone is determined in the first phase of the jury's deliberation and punishment is fixed in subsequent deliberations after considering the number of prior felony convictions. Ark. Stat. Ann. § 43-2330.1 (Repl. 1977). Therefore, experienced jurors, having this knowledge, will be able

to deduce that the defendant in a habitual offender proceeding has prior felony convictions, even though the prior convictions are not admissible to prove guilt. Appellant's argument was rejected in *Woods* v. *State*, 260 Ark. 882, 545 S.W.2d 912 (1977). Furthermore, the issue was not properly before the trial court. No objection was made to the verdict forms and the bifurcated procedure until after the trial had been concluded at which time it was raised in a motion for a new trial. We have often held that objections to a jury instruction must be made before the jury retires and objections made after the jury retires to deliberate are not timely. *Hickory Springs Mfg. Co.* v. *Emerson*, 247 Ark. 987, 448 S.W.2d 955 (1970); *Sunray Sanitation* v. *Pet, Inc.*, 249 Ark. 703, 461 S.W.2d 110 (1970); and *Golden* v. *State*, 265 Ark. 99, 576 S.W.2d 955 (1979).

Finally, appellant argues that the trial court erred by admonishing the entire jury panel, in an orientation procedure earlier in the day of the trial, to attempt to avoid a hung jury. This so-called "Allen" or "dynamite" charge, which parallels AMCI 6004, was not repeated to the trial jury. No objection was made to the orientation procedure until the trial had been concluded. It was then alleged as error in a motion for a new trial. An objection, to be timely, should be made when the trial court is afforded an opportunity to correct the asserted error. *Crafton* v. *State, supra.* A litigant may not await the outcome of the case before bringing alleged errors to the attention of the trial court.

At a posttrial hearing, one juror testified that the court's "Allen" charge, upon impanelment of the entire jury, affected her vote during deliberations. This testimony was impermissible and clearly violated Ark. Stat. Ann. § 28-1001, Rule 606 (b) (Repl. 1979). *Veasey* v. *State*, 276 Ark. 457, 637 S.W.2d 545 (1982); and *Sanson* v. *Pullum*, 273 Ark. 325, 619 S.W.2d 64 (1981).

Affirmed.