Cite as 2020 Ark. App. 207

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR-19-755

|  |  |  |
|---|---|---|
| | | **Opinion Delivered** April 1, 2020 |
| GEORGE BURNS | | |
| | APPELLANT | APPEAL FROM THE LITTLE RIVER COUNTY CIRCUIT COURT [NO. 41CR-17-109] |
| V. | | |
| | | HONORABLE CHARLES YEARGAN, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

George Burns appeals his conviction by a Little River County Circuit Court jury of two counts of sexual assault in the fourth degree. He challenges the court's exclusion of certain evidence and the denial of his motion for a new trial. We affirm on both points.

The victim, I.M., who was eighteen years old at the time of trial, testified that Burns is her former stepmother's brother-in-law and that she referred to him as her uncle. I.M. testified that Burns sexually abused her on multiple occasions beginning when she was thirteen years old.

Prior to trial, Burns filed a motion to admit evidence of I.M.'s other sexual conduct pursuant to Rule 411 of the Arkansas Rules of Evidence and Arkansas Code Annotated section 16-42-101 (Supp. 2019), known as the Arkansas rape-shield statute. Specifically, the court ruled that the rape-shield statute prohibited Burns from presenting the following evidence: I.M.'s claim of having given oral sex to a classmate, which the boy denied and the

school principal regarded as a factual impossibility; her claim of having had sex with two men in Bowie County, Texas; an entry in her diary asserting that a man named C.J. Washington took her virginity despite her statement to law enforcement that Burns took her virginity; her statement in her diary that she didn't report another sexual encounter because "no one would believe me because I lie too much"; and her 2019 accusation that a resident of an outreach shelter in Texarkana had sexually touched her, which shelter employees concluded she fabricated.

At trial, I.M. testified that she and her siblings would often go to Burns's house and that he would take them deer hunting. She stated that when she was thirteen, Burns began telling her how pretty she was and complimenting her body. She testified that when they would go deer hunting together, he would kiss her and touch her breasts and vagina under her clothing and that he once "put his finger in [her]" when they were hunting. She further testified that while riding with Burns from Texarkana to Mena, she fell asleep in the truck and awoke to Burns putting his hand into her pants. She stated that "[she] couldn't get his hand out of [her] pants so [she] just let him do whatever." When I.M. was approximately fourteen or fifteen years old, she and her sister spent the night at Burns's house. While they were sleeping in sleeping bags on the floor, Burns came into the room and "got on top of [I.M.] and put his penis inside [her]." I.M. testified that it hurt and that she made noises by slapping her hands on the ground loudly to wake her sister. Her sister woke up and told her aunt (Burns's wife Linda) that Burns was on top of I.M. I.M. testified that after that, she and her sister were not allowed to spend the night at Burns's house again.

2

I.M. did not immediately report the abuse. She said that she thought she and Burns were in a relationship and that Burns had told her not to tell anyone or he would go to jail. Several months later, I.M. told her stepmother about the abuse and eventually also told her grandmother. I.M.'s father then confronted Burns, who reportedly admitted, "I touched her breasts, I touched her breasts. She raised her shirt up and I touched her breasts while she masturbated." I.M.'s father then contacted the police.

The jury also heard evidence that in 2017, while I.M.'s stepmother was hospitalized, a family friend witnessed Burns making "sexual hand gestures" toward I.M. in the waiting room.

Burns testified that he had never sexually abused I.M. He explained that one night when he exited the bathroom, he discovered I.M. with her shirt pulled up, exposing her breasts. He stated that she was masturbating and that he had walked over to tell her to stop but had then lost his balance, and his "right hand hit her left breast."

Burns proffered much of the evidence that the court prohibited him from presenting pursuant to the rape-shield statute. During an in camera examination, I.M. stated that she had lied in her diary about C.J. Washington taking her virginity and acknowledged that there was a diary entry in which she denied having sex with Burns but stated that she had written it to mislead her sister. Burns also proffered the testimony of a school superintendent in Texas who dealt with I.M.'s claim of oral sex with another student and would have testified that video evidence showed that the boy was never near I.M. during the week she claimed the event occurred. Similarly, Burns claimed that the operations manager for the shelter in Texarkana would have testified that camera footage disproved the sexual-touching allegation I.M. made against another resident and that I.M. became angry and irate when she was confronted about

3

the issue. Finally, Burns proffered the testimony of an administrator from the Maud school district that I.M. had claimed that she snuck out of school with C.J. Washington, which would cast doubt on her statements to the court that the account in her diary regarding him was a lie.

Burns generally objected to the inclusion of jury instructions for the lesser-included offenses of sexual assault in the second degree and sexual assault in the fourth degree. He did not request that the jury instruction for sexual assault in the fourth degree distinguish between the felony and misdemeanor types of that offense. The circuit court then read the jury instructions to the jury and included only felony fourth-degree sexual assault. The jury convicted Burns of two counts of fourth-degree sexual assault and sentenced him to an aggregate term of twelve years' imprisonment.

Burns subsequently moved for a new trial, arguing that the jury instructions and verdict forms for sexual assault in the fourth degree failed to distinguish between the Class D felony and the Class A misdemeanor versions of the offense. He claimed that this ambiguity must be resolved in his favor. The court denied the motion, and this appeal follows.

Burns's first point on appeal is a challenge to the exclusion of certain evidence pursuant to the Arkansas rape-shield statute.[1] Specifically, he claims that the court erred in excluding evidence that:

1. I.M. made false allegations that she performed oral sex on a boy at school;

---

[1]To the extent that Burns argues that the exclusion of the rape-shield evidence constituted a violation of his constitutional rights, he failed to obtain a ruling on this issue below and is therefore barred from presenting it on appeal. It is the obligation of an appellant to obtain a ruling from the trial court in order to preserve an issue for appellate review. *McCraney v. State*, 2010 Ark. 96, at 7, 360 S.W.3d 144, 149.

2. I.M. made false allegations about having intercourse with two men in Bowie County, Texas;

3. I.M. lied in her diary that C.J. Washington "took her virginity";

4. I.M. wrote in her diary about Burns abusing her as a child and then the entry was scratched out, and she wrote that she did not tell anyone because no one would believe her because she "lie[s] too much"; and

5. I.M. made false allegations against a man at a shelter in Texarkana.

Our standard of review for evidentiary rulings is that circuit courts have broad discretion and that a circuit court's ruling on the admissibility of evidence will not be reversed absent an abuse of that discretion. *Vance v. State*, 2011 Ark. 392, at 6–7, 384 S.W.3d 515, 519 (citing *Allen v. State*, 374 Ark. 309, 287 S.W.3d 579 (2008)). More specifically, with regard to evidence subject to the rape-shield statute, we have said that the circuit court is vested with a great deal of discretion regarding whether evidence is relevant and should be admitted. *Id.* We will not reverse the circuit court's decision as to the admissibility of rape-shield evidence unless its ruling constitutes clear error or a manifest abuse of discretion. *Id.*

Three of the pieces of evidence Burns sought to admit—items 1, 2, and 5—fall squarely within the rape-shield statute and were properly excluded. Arkansas Code Annotated section 16-42-101(b) prohibits defendants from introducing (1) evidence "of a victim's prior allegations of sexual conduct with the defendant or any other person, which allegations the victim asserts to be true," and (2) evidence "concerning prior allegations of sexual conduct by the victim with the defendant or any other person if the victim denies making the allegations." Here, I.M. denied making the allegation that she performed oral sex on a boy at school, and she stated that the allegations against the two men in Bowie County and against the man at the shelter in Texarkana were true. The exclusion of these items was authorized by

the rape-shield statute, and we affirm the court's decision to prohibit Burns from introducing them. We also reject Burns's argument that the circuit court abused its discretion in failing to find pursuant to subsection (c) of the rape-shield statute that the probative value of this evidence outweighed its prejudicial or inflammatory effect.

The remaining two pieces of evidence—the diary entry regarding losing her virginity to C.J. Washington and the diary entry stating that no one would believe her if she reported the abuse because she "lie[s] too much"—do not fall squarely within the rape-shield statute, but Burns has not demonstrated prejudice from their exclusion. Here, these pieces of evidence would only be relevant to attack I.M.'s credibility, and Burns did that by vigorously cross-examining I.M. about other prior inconsistent statements she had made about Burns. He also presented evidence showing that I.M. had motive to fabricate allegations against him because she wanted to live with her grandmother. Furthermore, he presented multiple witnesses to contradict I.M.'s testimony, including her own sister who testified that she never saw Burns on top of I.M. on the night that I.M. claims Burns raped her. Moreover, Burns presented the testimony of several witnesses to contradict I.M.'s claim that she never spent the night at Burns's house after the night he raped her. Burns's wife also presented significant testimony undercutting the claim of rape, stating that Burns had not been out of bed for more than three minutes on the night in question and that he suffered from erectile dysfunction and would not have been able to rape I.M. in the way she described.

Despite Burns's strong attempt to discredit I.M., the jury believed her and convicted him of two counts of fourth-degree sexual assault. It is impossible to say that admission of the two diary entries would have changed the outcome of this case. I.M.'s testimony alone was

sufficient to support Burns's convictions. Burns's own statement to I.M.'s father about touching her breast and his testimony at trial asserting that he lost his balance and accidentally grabbed I.M.'s breast significantly undermine his argument that I.M. was not credible and was fabricating the allegations. Because Burns has not demonstrated prejudice from the court's exclusion of these two pieces of evidence, we affirm.

Burns's second point on appeal is a challenge to the court's denial of his motion for a new trial based on the jury instructions. He claims that the court's jury instructions failed to differentiate between felony and misdemeanor versions of the offense of sexual assault in the fourth degree. Burns acknowledges that he failed to contemporaneously object to the jury instructions but argues that the court erred in denying his post-trial motion.

It is well settled that a party must object and proffer a jury instruction in order to later appeal the instructions given to the jury. *Douglas v. State*, 2017 Ark. 70, at 4, 511 S.W.3d 852, 855. A motion for a new trial cannot be used to revive an issue that was not properly preserved for appeal. *See, e.g.*, *Wooten v. State*, 2016 Ark. 376, at 5, 502 S.W.3d 503, 507. In *Tosh v. State*, 278 Ark. 377, 381, 646 S.W.2d 6, 8 (1983), the Arkansas Supreme Court rejected a similar challenge to the verdict forms used in a criminal trial. The court held that the issue was not properly before the circuit court because no objection was made to the verdict forms until after the trial had been concluded, at which time it was raised in a motion for a new trial. The Arkansas Supreme Court has often held that objections to a jury instruction must be made before the jury retires and objections made after the jury retires to deliberate are not timely. *Id.* (citing *Hickory Springs Mfg. Co. v. Emerson*, 247 Ark. 987, 448 S.W.2d 955 (1970); *Sunray*

*Sanitation v. Pet, Inc.*, 249 Ark. 703, 461 S.W.2d 110 (1970); *Golden v. State*, 265 Ark. 99, 576 S.W.2d 955 (1979)).

Affirmed.

KLAPPENBACH and BROWN, JJ., agree.

*Jeff Rosenzweig*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.