Cite as 2024 Ark. App. 302

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CR-23-525

| | |
|---|---|
| SHANTERIA MONTGOMERY<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered  May 8, 2024<br><br>APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT<br>[NO. 18CR-22-261]<br><br>HONORABLE RANDY F. PHILHOURS, JUDGE<br><br>AFFIRMED |

## WENDY SCHOLTENS WOOD, Judge

Shanteria Mongomery appeals a sentencing order of the Crittenden County Circuit Court convicting her of first-degree felony murder, committing a terroristic act, and tampering with evidence. She was sentenced to forty years in prison for first-degree murder with two enhancements: fifteen years for the use of a firearm and ten years for committing the murder in the presence of a child; forty years in prison for committing a terroristic act with a fifteen-year enhancement for the use of a firearm; and six years in prison for tampering with physical evidence.[1] Mongomery raises three points on appeal: (1) the application of the firearm enhancement to the first-degree-murder and terroristic-act convictions constituted a double-jeopardy violation; (2) the application of the firearm enhancement to the first-degree-

---

[1]The circuit court ordered that the sentences be run consecutively for an aggregate of 126 years in prison.

murder and terroristic-act convictions was an illegal sentence and deprived her of her right to a jury trial; and (3) the circuit court erred in not accepting her proffered jury instructions for second-degree murder and manslaughter.[2] We affirm.

On April 10, 2022, Montgomery allegedly shot a gun at a group of cars, but the bullet struck and killed an eight-year-old child (MV), who was playing nearby. A thirteen-year-old witness (MW), who was playing with MV at the time of the shooting, testified that there had been a "splat ball war" going on in the neighborhood for about a month. MW described a splat-ball gun as containing "Orbeez," which are jelly-like beads that pop when they hit you.

MW testified that there was going to be a splat-ball war going on the day of the shooting because it was discussed in a group text. She stated that she and MV were walking down the street to play basketball when she saw three cars containing individuals who appeared to be teenagers driving in the neighborhood. MW said that she also saw Montgomery, whom MW knew, walking down the street with a gun in her hand and pointing it "at the car in front of everybody in front of [Montgomery's] home." MW heard a loud boom and began running as did the other children that were with her except MV. When MW found MV, she was lying on the ground with blood coming from the side of her head. MW called 911.

_____

[2]Mongomery initially raised a fourth point on appeal—the application of both the firearm and presence-of-a-child enhancements created an ambiguity in the application of her sentence for first-degree murder. In her reply brief, she withdrew this argument; therefore, we do not address it.

On April 12, the State charged Montgomery with first-degree felony murder, committing a terroristic act, and tampering with physical evidence. The first-degree-murder charge was based on Montgomery's having committed a felony terroristic act that resulted in MV's death. The felony information was amended on December 19 to include enhancements for committing a felony with a firearm and committing a felony in the presence of a child. *See* Ark. Code Ann. § 16-90-120 (Repl. 2016) & § 5-4-702 (Repl. 2013).

A jury trial took place over several days in January 2023. Montgomery's defense was a complete denial. In a police interview following the shooting, Montgomery denied having or shooting a gun that day. She admitted throwing a bottle at the people in the front of her house, some of whom she claimed "jumped" her. During trial, Montgomery's counsel asked the circuit court to submit the case on the lesser-included offenses of second-degree murder, manslaughter, and extreme-emotional-disturbance manslaughter. The circuit court denied the request, and Montgomery's counsel proffered the instructions. The jury found Montgomery guilty of first-degree felony murder, committing a terroristic act, and tampering with evidence. A sentencing order was entered on January 13, and this appeal followed.

I. *Double Jeopardy*

Montgomery first argues that the application of the firearm enhancements to the first-degree-murder and terroristic-act convictions constituted a violation of double jeopardy under both state and federal law. Montgomery contends that the jury was required to find that Mongomery used a firearm or "shot" in finding her guilty of first-degree murder and committing a terroristic act, and then was required in sentencing to find this same element

3

for the firearm enhancement. As a result, she argues, the application of the firearm enhancement fails the same-elements test under *Blockburger v. United States*, 284 U.S. 299 (1932).[3]

Montgomery did not raise this double-jeopardy argument below, but she contends that she can raise it for the first time on appeal because it is an illegal sentence. We disagree.

Our supreme court in *State v. Montague*, 341 Ark. 144, 14 S.W.3d 867 (2000), held that an alleged double-jeopardy violation on direct appeal, similar to the one Mongomery is claiming here, is not treated as an illegal sentence. Rather, a defendant is required to raise

---

[3]The Fifth Amendment to the United States Constitution and article 2, section 8 of the Arkansas Constitution require that no person be twice put in jeopardy of life or liberty for the same offense. The Double Jeopardy Clause protects criminal defendants from (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Campbell v. State*, 2017 Ark. App. 340, at 7–8, 525 S.W.3d 465, 470. In order to determine whether the same act violates two separate statutory provisions, we apply the same-elements test, commonly referred to as the *Blockburger* test, which states as follows:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."

*Blockburger*, 284 U.S. at 299 (quoting *Morey v. Commonwealth*, 108 Mass. 433, 434 (1871)). The Arkansas General Assembly has codified this constitutional protection at Arkansas Code Annotated section 5-1-110(b) (Repl. 2013), which provides that an offense is included in an offense charged if the offense is established by proof of the same or less than all the elements required to establish the commission of the offense charged.

the argument to the circuit court. *Montague*, 341 Ark. at 146, 14 S.W.3d at 868; *see also Young v. State*, 2009 Ark. App. 728 (declining to address an argument couched in terms of a void or an illegal sentence for the first time on appeal when the substance of the argument is based on a violation of double jeopardy). Because Montgomery did not raise this double-jeopardy argument in the circuit court, it is not preserved for appeal.

II. *Illegal Sentence*

For her second point on appeal, Montgomery argues that the application of the firearm enhancement to the first-degree-murder and terroristic-act convictions constituted an illegal sentence "because the [amended] information did not specify that [she] employed a firearm in either count," and the "application of these enhancements further deprived [her] of [her] right to a jury trial as it presupposed her guilty on an element within the amended information." In her reply brief, she elaborates by arguing, "The issue presently before this Court is the State's departure from the charging instrument to its jury instruction where the State specified that Montgomery 'shot.'" She continues:

> The [amended] information does not specify the manner in which the offense was committed. The [jury] instruction, however, departs from the offense charged and asks the jury to find whether or not Montgomery shot at a conveyance. This necessarily means that the State made a factual determination which was within the province of the jury. This factual determination subjected Montgomery to a firearm enhancement and did so while circumventing the jury and its fact finding role.

MV died when she was shot in the head with a bullet from a firearm. The State filed an amended felony information on December 19, 2022, against Montgomery that provided:

> **COUNT I: MURDER IN THE FIRST DEGREE, ARK. CODE ANN.§ 5-10-102(a)(l).** The said defendant in the Second Judicial District of Arkansas, of which

5

Crittenden County is a part, did unlawfully and feloniously on or about April 10th, 2022, while acting alone or with one or more other persons, unlawfully commit a felony, to wit: a Terroristic Act (Ark. Code Ann.§ 5-13-310), and in the course of and in furtherance of the felony Terroristic Act or in immediate flight from the felony, cause the death of another person under circumstances manifesting extreme indifference to the value of human life; thereby; committing the offense of MURDER IN THE FIRST DEGREE, said offense being a CLASS Y FELONY against the peace and dignity of the State of Arkansas.

**COUNT 2: TERRORISTIC ACT, ARK. CODE ANN. § 5-13-310.** The said defendant in the Second Judicial District of Arkansas, of which Crittenden County is a part, while not in the commission of a lawful act, did unlawfully and feloniously on or about April 10th, 2022, shoot at or project an object at a conveyance which was being operated or which was occupied by another person with the purpose to cause injury to another person or damage to property causing serious physical injury or death to another person; thereby committing the offense of TERRORISTIC ACT, said offense being a CLASS Y FELONY against the peace and dignity of the State of Arkansas.

. . . .

### ENHANCEMENT OF SENTENCE

The State of Arkansas, pursuant to A.C.A. § 16-90-120 (felony with a firearm), seeks to increase the sentence for the defendant in this matter.

Regarding the terroristic-act count, the amended information provided that Montgomery "did unlawfully and feloniously on or about April 10th, 2022, *shoot at or project an object at a conveyance . . . .*" (Emphasis added.) This language was taken directly from the terroristic-act statute. Ark. Code Ann. § 5-13-310(a)(1) (Repl. 2013). Although the amended information alleged the firearm enhancement, it did not specify on which counts the firearm enhancement applied or on what grounds the State sought to impose the enhancement.

However, ten days later, the State filed its proposed jury instructions. The instructions narrowed the manner of committing the terroristic act by stating that Montgomery "shot at

a conveyance." The instructions also specifically alleged that Montgomery employed a firearm as a means of committing both first-degree murder and a terroristic act.

Montgomery appears to contend that because the amended information did not specify the manner in which the terroristic-act charge was committed, but the instruction asked the jury to find whether Montgomery shot at a conveyance, the State effectively made a "factual determination" on the issue of her use of a firearm; her guilt was presupposed, which was an element of the substantive offenses to be determined by the jury; and her right to a jury trial was violated, which resulted in an illegal sentence. There is no merit to this argument.

First, Montgomery provides no authority for her claim that jury instructions are "factual determinations" made by the State. The purpose of jury instructions is to inform the jury of the legal principles applicable to the facts presented and to furnish a guide in reaching a verdict. *Hearn v. E. Tex. Motor Freight Lines*, 219 Ark. 297, 299, 241 S.W.2d 259, 261 (1951).

Moreover, each party has the right to have the jury instructed on the law of the case with clarity and in such a manner as to leave no grounds for misrepresentation or mistake. *Garrison v. Hodge*, 2018 Ark. App. 556, at 5, 565 S.W.3d 107, 112. The Arkansas Supreme Court has often held that objections to a jury instruction must be made before the jury retires, and objections made after the jury retires to deliberate are not timely. *Burns v. State*, 2020 Ark. App. 207, at 7–8, 599 S.W.3d 332, 336 (citing *Tosh v. State*, 278 Ark. 377, 381,

7

646 S.W.2d 6, 8 (1983)). According to the record on appeal, Montgomery never objected to the jury instructions.

Finally, the cases Montgomery cites do not support her argument that her guilt was "presupposed." In *Ellis v. State*, 2019 Ark. 286, 585 S.W.3d 661, the appellant was convicted of one count of first-degree murder, a terroristic act causing death, and twenty-eight counts of committing a terroristic act. During the guilt phase of trial, the jury was given a single firearm-enhancement verdict form stating, "Do you, the Jury, find beyond a reasonable doubt that [the appellant] or an accomplice employed a firearm as a means of committing Murder in the First Degree?" The foreperson marked yes. During the sentencing phase, the jury completed twenty-nine verdict forms stating, "We the Jury, find that [the appellant] employed a firearm as a means of committing a Terroristic Act . . . fix his sentence at a term of _____ in the [ADC]." *Ellis*, 2019 Ark. 286, at 3, 585 S.W.3d at 663. On appeal, Ellis argued that the sentence of twenty-nine years under the firearm-enhancement statute was illegal. The supreme court agreed, holding that it is "axiomatic that in order to impose a sentence in the second phase of a bifurcated trial, the jury must make a finding of guilt during the first phase." *Id.* at 4, 585 S.W.3d at 664. The supreme court reversed the 29 one-year enhancements because the jury did not find beyond a reasonable doubt that the appellant had employed a firearm as a means of committing terroristic acts. *Id.* at 5, 585 S.W.3d at 664.

In *Ellis*, the jury did not make a finding that the appellant had employed a firearm in the commission of the offenses of committing a terroristic act; therefore, the supreme court

reversed the firearm enhancements that were imposed on the terroristic-act convictions. In contrast, the jury in this case was instructed that the State alleged that she employed a firearm as a means of committing a terroristic act and first-degree murder. Unlike in *Ellis*, the jury in Montgomery's case filled out verdict forms for both first-degree murder and committing a terroristic act during the guilt phase. The jurors were asked whether they "find beyond a reasonable doubt, that . . . Montgomery employed a firearm as a means of committing" the respective offenses. The jury responded affirmatively to each question. Therefore, no element of the firearm enhancement was presupposed. The jury found that Montgomery employed a firearm when committing first-degree murder and when committing a terroristic act. Therefore, Montgomery was not denied the right to a jury trial.

Montgomery also cites *Martinez v. State*, 2019 Ark. 85, 569 S.W.3d 333. In *Martinez*, the appellant argued that the circuit court illegally enhanced his sentence for capital murder because the jury did not find him guilty beyond a reasonable doubt of using a firearm in the commission of a felony. The appellant argued that the jury's failure to make a finding rendered the enhancement illegal. The supreme court rejected the appellant's reliance on *Johnson v. State*, 249 Ark. 208, 458 S.W.2d 409 (1970), explaining that in *Johnson*, the "trial court was without authority to impose a firearm enhancement because the information had not alleged a violation of the enhancement statute *and* there had been no finding by the jury that the defendant had utilized a firearm." *Martinez*, 2019 Ark. 85, at 8, 569 S.W.3d at 337 (emphasis added). The supreme court noted that Johnson's only conviction was for robbery and that the *Johnson* court pointed out that the manner of the force or mode of intimidation

9

(use of a firearm) is not material to a finding of guilt for robbery. *Id.* at 8, 569 S.W.3d at 337–38.

In affirming the convictions in *Martinez*, the supreme court stated that the convictions for capital murder and unlawful discharge of a firearm required the jury to find beyond a reasonable doubt that the appellant used a firearm in the commission of the capital murder. Noting that the enhancement was not a substantive offense but rather a sentence enhancement, the supreme court held that the jury's findings of guilt were sufficient to trigger the application of the firearm enhancement and that the enhancement for capital murder was not illegal. *Id.* at 9, 569 S.W.3d at 338.

As in *Martinez*, the amended felony information filed against Montgomery contained the firearm enhancement. Moreover, there were specific firearm-enhancement jury instructions in her case that required the jury to find beyond a reasonable doubt that she used a firearm in committing first-degree murder and a terroristic act. Therefore, *Martinez* supports the holding in this case that Montgomery's guilt was not presupposed. Rather, the jury found that Montgomery used a firearm while committing first-degree murder and a terroristic act. Therefore, we affirm this point on appeal.

### III. *Jury Instructions*

Mongomery contends that the circuit court erred in refusing to instruct the jury on second-degree murder, manslaughter, and extreme-emotional-disturbance manslaughter, asserting that they are lesser-included offenses. It is reversible error to refuse to give an instruction on a lesser-included offense when the instruction is supported by the slightest

evidence. *Atkinson v. State*, 347 Ark. 336, 349, 64 S.W.3d 259, 268 (2002) (citing *Chapman v. State*, 343 Ark. 643, 38 S.W.3d 305 (2001)). The circuit court may refuse to offer a jury instruction on an included offense when there is no rational basis for a verdict acquitting the defendant of the charged offense and convicting him of the included offense. *Id.*, 64 S.W.3d at 268. Additionally, it is not erroneous for the circuit court to decline to give the proffered instruction on the lesser offense when the evidence clearly shows that the defendant is either guilty of the greater offense charged or innocent. *Id.*, 64 S.W.3d at 268. In cases in which a defendant makes a claim of innocence, no rational basis exists to instruct the jury on a lesser-included offense because the jury need only determine whether the defendant is guilty of the crime charged. *Id.*, 64 S.W.3d at 268; *see also Sims v. State*, 2015 Ark. 363, at 11, 472 S.W.3d 107, 115–16; *Vickers v. State*, 313 Ark. 64, 68, 852 S.W.2d 787, 789–90 (1993); *Crift v. State*, 2018 Ark. App. 15, at 5–7, 539 S.W.3d 599, 602–03.

MV was killed by a gunshot wound to the head. Assuming for the sake of argument that the proffered instructions were lesser-included offenses, there was no rational basis to instruct the jury on the alleged lesser-included offenses because Mongomery denied possessing and shooting a gun that day. Accordingly, whether she purposely, knowingly, or recklessly shot and killed the victim is of no significance. Therefore, the circuit court did not err in refusing to give the instructions.

Affirmed.

HIXSON and BROWN, JJ., agree.

*Thompson & Holmes*, by: *Jake Holmes*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.